299 S.E.2d 8

**Carol Sue Hunter PERRY, Administratrix, etc.**

v.

**G. Kemp MELTON, etc., et al.**

**No. 14819.**

Supreme Court of Appeals of West Virginia.

Dec. 10, 1982.

Henry C. Bias, Jr., Charleston, for appellant.

Jeffrey M. Wakefield and Don R. Sensabaugh, Jr., Charleston, for Sheriff.

Charles E. Hurt, Charleston, for Whitehurst, et al.

HARSHBARGER, Justice:

This wrongful death suit was brought in the Circuit Court of Kanawha County by Carol Sue Hunter Perry, Administratrix of the estate of Ronald N. Hunter, to recover damages against G. Kemp Melton, Administrator of the estate of Stephen A. Bailey, Donald J. Whitehurst and his employer, Morgan Drive Away. The jury verdict of $23,393.90 was against Bailey's estate and exculpated the other defendants.

The administratrix appealed, contending that the trial court should not have denied her motion for a directed verdict on liability against all defendants, and should have instructed the jury on punitive damages. Because the trial court improperly refused plaintiff's punitive damage instruction as to Bailey's estate, we reverse that part of the jury's verdict and remand that part of the case for a new trial. We affirm the verdict in favor of the remaining defendants.

The evidence is not in sharp conflict upon the material facts surrounding the tragic accident. At around midnight on the night of March 26, 1977, defendant Whitehurst left the 76 Truck Stop near the Interstate 64 Winfield exit, and was traveling east in his tractor trailer when it suddenly lost all power and he was forced to coast to a stop on the right-hand berm of the highway,

some two-tenths of a mile east of the Cross Lanes interchange.

Whitehurst examined the position of his tractor trailer with a flashlight, and found the left rear corner of the empty low-boy trailer bed hanging slightly over the painted white line marking the edge of the outside lane. While he was standing at the rear of the trailer with a flashlight, State Trooper Lett drove up and gave him two flares or fuses, told him where to put them, and offered to call a wrecker. Whitehurst declined the trooper's offer and contacted a friend on his citizens' band radio who picked him up near his disabled truck and drove him back to the 76 Truck Stop where he called a wrecker service. The wrecker operator left immediately to retrieve the disabled vehicle, but by the time he arrived, about thirty-five minutes later, the fatal accident had happened.

Sometime after Whitehurst left his disabled vehicle, decedent Bailey entered the entrance ramp at the Cross Lanes exchange, heading east. According to the testimony of a disinterested witness, Bailey reached the junction of the entrance lane and the interstate highway about the same time as a Smith Transfer tractor trailer truck the witness had been following for several miles. Bailey's vehicle and the Smith Transfer truck were both traveling at about fifty-five miles per hour. Bailey continually increased his speed and attempted to overtake the truck by driving on the far right lane designated for emergency parking only, but his car struck the left rear corner of the disabled tractor trailer, became airborne, crossed the highway in front of the Smith Transfer truck, landed in the median separating the east and west-bound lanes, and then collided with Hunter's car traveling in the west lane. Ronald Hunter and Bailey died in this violent collision. Bailey's blood-alcohol content was .19 percent, according to medical testimony.

The administratrix's position throughout this litigation has been that the wrongful death occurred as a result of the concurrent negligence of Whitehurst, the driver of the disabled truck, and Bailey. The jury disagreed.

The evidence establishing a *prima facie* case as to the truck driver's negligence does not prove his negligence was, as a matter of law, a proximate or efficient cause of the wrongful death sufficient to justify a directed verdict.

The trial court properly instructed the jury that the motor vehicle safety laws in this State require the driver of a truck to carry three flares (liquid burning pot torches) or at least three red electric lanterns capable of producing light for at least twelve hours. W.Va.Code, 17C–15–39. They were also instructed that the violation of a motor vehicle safety statute is *prima facie* negligence, and that if they believed from a preponderance of the evidence that Whitehurst did not have the safety device required by law, they could find him negligent.

■ Under our law the intervening act of a third person may constitute a new and effective cause, which operating independently of one party's negligence, is the proximate cause of the injury or death. This basic tort principle was stated in Syllabus Point 16 of *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 (1963):

> An intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.

*See also Evans v. Farmer,* 148 W.Va. 142, 133 S.E.2d 710 (1963); *Smith v. Penn Line Service, Inc.,* 145 W.Va. 1, 113 S.E.2d 505 (1960); *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d 672 (1954); Syllabus Point 1, *Wilson v. Edwards,* 138 W.Va. 613, 77 S.E.2d 164 (1953); 2 Restatement (Second) of Torts, §§ 440–449 (1965).

■ The jury was presented with a classic factual question of whether the truck driver's negligence was a contributing cause of the accident, or whether the proven negligent conduct of Bailey was an in-

tervening or superseding cause of the accident relieving the truck driver of liability. The trial court was correct in denying plaintiff's request for a directed verdict and in submitting the truck driver's liability to the jury. The facts were such that reasonable minds could differ on the issue of proximate cause. On the evidence, the jury could reasonably have found that the negligent acts of Bailey were the only proximate cause of the accident.

The fact that the accident would not have occurred had the disabled truck not been parked in the emergency parking lane is not enough, standing alone, to establish liability. "In this jurisdiction there is a clear distinction between the proximate cause of an injury and the condition or occasion of the injury." Syllabus Point 4, *Webb v. Sessler*, 135 W.Va. 341, 63 S.E.2d 65 (1950). Its presence there may have been a cause-in-fact of the collision and death, but that alone does not suffice. The truck driver's negligence must be a proximate or contributing cause before liability is established. Under our law, even assuming the truck driver's negligence in not carrying fuses or flares in his vehicle as required by statute, or in not taking other action that a reasonably prudent person would have taken to protect against injury, such as contacting a wrecker service sooner than he did, the subsequent actions of Bailey could be found the only cause of the collision.

■ The evidence presented to the jury was that Bailey, while driving with a blood-alcohol content of .19 percent, sought to pass a tractor trailer going about fifty-five miles per hour by traveling in excess of that speed in the far right-hand lane designed for emergency parking only. This was, as a matter of law, at least ordinary negligence. The collision occurred after midnight on a clear, dry night in a straight stretch of interstate highway, and the disabled trailer had reflectors along its rear bumper. In these circumstances, the jury could reasonably have determined that

Bailey would not have seen or heeded flares or reflectors even if they had been in place. The jury could have found that Bailey saw the disabled trailer, but instead of coming to a stop or slowing down to wait for the Smith Transfer truck to pass by, he attempted to outrun the Smith Transfer truck without hitting the disabled tractor trailer.

■ We do not lightly interfere with a jury's determination.

"In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." *Syllabus* point 3, *Walker v. Monongahela Power Company*, 147 W.Va. 825, 131 S.E.2d 736 (1963).

Syllabus Point 4, *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975).

■ The jury's verdict as to Bailey's estate, however, must be reversed because of the trial court's refusal to instruct on punitive damages,* based on his notion that it is against public policy to assess punitive damages against anyone other than a person to be punished, and based on the general rule that punitive damages cannot be awarded against the estate of a dead tort-feasor. The trial court did recognize that we have never written on this question. Public policy purposes for punitive damages constrain us to reverse the learned judge.

Courts that have considered the question have been virtually unanimous in holding that punitive damages cannot be awarded against the estate of a deceased tort-feasor. In some states the survival or wrongful death statute expressly prohibits such an award. *See, e.g., Mervis v. Wolverton*, Miss., 211 So.2d 847 (1968); *Gordon v. Nathan*, 43 A.D.2d 917, 352 N.Y.S.2d 464 (1974). Other courts have denied them because their only purpose is to deter and

---

* The trial court did not err in refusing to instruct the jury on punitive damages against the truck driver. The evidence against the truck driver could properly be considered not to support a finding of gross negligence or reckless, wanton misconduct.

punish persons who commit wrongful acts, the theory being that if the wrongdoer is dead, he cannot be punished by any earthly judgment. *See, e.g., Thompson v. Estate of Petroff,* 319 N.W.2d 400 (Minn.1982); *Sears, Roebuck and Company v. Jones,* 303 S.W.2d 432 (Tex.Civ.App.1957); *Dalton v. Johnson,* 204 Va. 102, 129 S.E.2d 647 (1963); Annot., 65 A.L.R. 1049 (1930); 25 C.J.S. *Damages* § 125(3) (1966); *contra, Johnson v. Rinesmith,* 238 So.2d 659 (Fla. App.1970).

Punitive damages in this state serve other equally important functions and are supported by public policy interests going beyond simple punishment of the wrongdoer. Consequently, the reasons for them do not cease on the death of the tort-feasor.

In *Hensley v. Erie Insurance Company,* 168 W.Va. 172, 283 S.E.2d 227 (1981), we discussed a related question and held that the public policy of this State does not preclude insurance coverage for punitive damages arising from reckless misconduct. Those plaintiffs sued because of an automobile accident in which the defendant, while intoxicated, operated his vehicle at high speed on the wrong side of a public highway. Plaintiffs sought compensatory and punitive damages. The defendant's insurance company refused to settle within the policy limits, and the jury returned a verdict against the defendant driver for compensatory and punitive damages. After the insurance company paid the policy limits on the judgment for compensatory damages, plaintiffs brought a direct action against the insurance company to recover the excess of compensatory and punitive damages.

The trial court ruled that the insurance company could not be required to pay the punitive damages awarded against its insured because public policy prohibited shifting punitive damages to an insurance company, and because punitive damages are designed solely to punish and deter the wrongdoer. In answering the certified question of law, we stated:

> Much of the difference of opinion in the public policy area may be attributable to a constricted view of the purpose of punitive damages. The usual rubric that punitive damages are designed to

> punish and deter the wrongdoer is an acceptable statement but it is not the only statement that can be made. To punish and deter may inform the wrongdoer why he must pay. However, it supplies no reason why the injured party obtains the benefit of such payment of punitive damages. Some courts have recognized that from the plaintiff's standpoint punitive damages are additional compensation for the egregious conduct that has been inflicted on the injured party. (Citations omitted.)

> We have followed the traditional rule that punitive damages are awarded to punish the defendant. *Addair v. Huffman,* 156 W.Va. 592, 195 S.E.2d 739 (1973); *O'Brien v. Snodgrass,* 123 W.Va. 483, 16 S.E.2d 621 (1941); *Hess v. Marinari,* 81 W.Va. 500, 94 S.E. 968 (1918); *Mayer v. Frobe,* 40 W.Va. 246, 22 S.E. 58 (1895). In *Ennis v. Brawley,* 129 W.Va. 621, 630, 41 S.E.2d 680, 685 (1947), we recognized that punitive damages are also awarded "to deter others from pursuing a like course of conduct." There does not seem to be any reason to fail to acknowledge that the injured party does benefit from an award of punitive damages. We find nothing in our social or public policy that precludes this consideration when we evaluate the propriety of permitting coverage for punitive damages occasioned by gross, reckless or wanton negligence.

> ... Finally, we believe the narrow claim that punitive damages rests solely on a theory of punishment of the defendant ignores practical reality. The law accords the plaintiff an extra measure of recovery by way of punitive damages for any number of reasons where the defendant has been found guilty of gross, reckless or wanton negligence.

*Hensley v. Erie Insurance Co., supra,* 168 W.Va. at 182–183, 283 S.E.2d, at 232–233.

Still more recently in *Wells v. Smith,* 171 W.Va. 97, 297 S.E.2d 872 (1982), we reviewed the theoretical basis for punitive damages awards and found that punitive damages in a proper case may be recovered even when no compensatory damages are awarded. We observed that punitive dam-

ages serve interests going beyond personal vindication of the plaintiff: they serve a societal function. Though primarily they punish and deter a particular tort-feasor, they also deter others from engaging in similar acts, and provide additional compensation to sufferers from a defendant's reckless and wanton misconduct. We also observed in Note 15 of *Hensley* that punitive damage awards may encourage persons who have suffered only nominal or minimal damages, to sue those who conduct themselves outrageously. We recognized that punitive damages also may provide a substitute for personal revenge by the wronged party. *See also Mauck v. City of Martinsburg,* 167 W.Va. 332, 280 S.E.2d 216 (1981).

It has long been a part of our law that a decedent's personal representative can recover punitive damages in a wrongful death action against a living tort-feasor. No sufficient justification exists for denying punitive damages simply because the tort-feasor is dead.

That the punitive damages may be paid by a liability insurer is no reason to deny their recovery. Liability insurance protects persons who have been injured just as it protects an insured.

For the foregoing reasons, the verdict and judgment of the Circuit Court of Kanawha County as to Bailey's estate is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.