669 A.2d 378

**G.J.D. and D.K., a Minor, by G.J.D., His Parent and Natural Guardian, and J.K., a Minor, by G.J.D., Her Parent and Natural Guardian, Appellees,**

**v.**

**Geraldine T. JOHNSON, Executrix of the Estate of Darwin T. Thebes, Deceased, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 1995.

Filed Dec. 12, 1995.

William Costopoulos, Lemoyne, for appellant.

Richard C. Ruben, Harrisburg, for appellees.

Before CAVANAUGH, McEWEN and DEL SOLE, JJ.

McEWEN, Judge:

This appeal has been taken from the judgment entered against appellant, Geraldine T. Johnson, as executrix of the Estate of Darwin Thebes, following the denial of post-verdict motions challenging rulings of the trial court made during the course of the trial of this action for damages based on defamation, "false light" invasion of privacy, invasion of privacy by publicity given to private life, and intentional infliction of emotional distress. We have carefully reviewed the argu-

ments presented by appellant, but find no basis upon which to disturb the verdict and, therefore, affirm.

Initially, we note that on appeal from the refusal of the lower court to enter judgment n.o.v., the sole duty of the appellate court is to decide whether there was sufficient evidence to sustain the verdict, granting the verdict winner the benefit of every favorable inference reasonably to be drawn from the evidence and rejecting all unfavorable testimony and influences. *McDevitt v. Terminal Warehouse Company,* 304 Pa.Super. 438, 450 A.2d 991 (1982). The grant or denial of a new trial is within the sound discretion of the trial court, whose decision will be reversed only where the record indicates that the trial court committed an error of law or clearly and palpably abused its discretion. *Palmer v. Brest,* 254 Pa.Super. 532, 386 A.2d 77 (1978). *Walasavage v. Marinelli,* 334 Pa.Super. 396, 405–409, 483 A.2d 509, 514–515 (1984).

Appellee G.J.D., who had separated from her second husband in July of 1980, met the decedent, Darwin Thebes, that summer and began a relationship with him. Thebes subsequently, in the fall of 1981, moved into the residence shared by G.J.D. and her two children, appellees D.K. and J.K., and shortly thereafter, according to the testimony presented by appellees, became verbally, physically and psychologically abusive to G.J.D. Appellees offered evidence to establish that Thebes would, in addition to physically striking appellee G.J.D., break items of sentimental value, take Polaroid pictures of G.J.D. after physically abusing her, and accuse her of infidelity and prostitution. To escape the abuse, G.J.D. sent her children to live with their grandmother sometime in 1985. G.J.D., however, remained behind, allegedly as a result of her fear of retribution by Thebes if she too moved out. Eventually, in September of 1985, G.J.D. moved out as well, although she continued to have a relationship with Thebes through the summer of 1986.

In August of 1986, G.J.D. declined Thebes' invitation to attend the York County Fair with him. Several months later, while exhibiting her goats at the Perry County Fair, J.K.

discovered two pieces of xeroxed paper in her goat pen, containing sexually explicit photos of her mother. One of the photos showed G.J.D. in the nude, while the other showed her performing oral sex on an unidentifiable male. The photos were captioned: "Suck lollipops for money, [G.J.D.], 582–4407, New Bloomfield, PA." J.K. testified that she had seen and spoken with Darwin Thebes at the Perry County Fair prior to discovering the photocopies. Similar photocopies, which appeared only at public gatherings attended by both Thebes and acquaintances of G.J.D., were directed at G.J.D.'s family, neighbors, and employer. Photocopies were also found on the ground near the children's school bus stop, at D.K.'s high school football games, and near the mailboxes of G.J.D.'s mother and brother. The photocopies, which had been made from two of the sexually explicit Polaroid pictures Thebes had taken of G.J.D. in 1983, stopped appearing after appellees' civil complaint was filed and served upon Darwin Thebes.

Appellees filed their original complaint on February 20, 1987. When the initial deposition of Thebes could not be completed on October 5, 1987, a second deposition was conducted on or about March 24, 1988. G.J.D. and D.K. were deposed on May 18, 1988. Approximately 15 months after suit had been instituted, on June 8, 1988, Thebes committed suicide. On December 28, 1988, Geraldine Johnson was substituted as the party defendant in her capacity as executrix of the Estate of Darwin Thebes.

After pretrial hearings to resolve certain evidentiary issues including the applicability of the Dead Man's Act, a trial date of August 3, 1993, was set, and a jury for the July term was selected on July 12, 1993. Appellant filed a motion, on July 28, 1993, requesting a continuance of trial so as to enable her to more fully recuperate from her cancer surgery of July 8, 1993. The court denied the request and trial commenced on August 3, 1993. At trial, G.J.D. testified that, as a result of the distribution of the photocopies throughout the community, both of her children had developed emotional, scholastic and behavioral problems. J.K. commenced the abuse of sub-

stances, both alcohol and drugs, and eventually sought psychiatric care, which included three months as an in-patient at York Hospital, while D.K. began to spend an inordinate time at home and, the following year, did quite poorly in his first year of undergraduate studies at Penn State, eventually losing his ROTC scholarship.

The jury returned a verdict in favor of each appellee, awarding G.J.D. $6,015 in compensatory damages and $36,500 punitive damages; D.K. was awarded $5,000 in compensatory damages and $20,000 in punitive damages; and J.K. was awarded $10,000 in compensatory damages and $20,000 in punitive damages. Timely post-verdict motions were filed and denied and this appeal followed.

Appellant contends that the trial court erred in refusing her request for judgment n.o.v. or, in the alternative, a new trial and in her brief frames the following questions for our consideration: [1]

WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER EVIDENCE AS TO PUNITIVE DAMAGES AND IN PERMITTING APPELLEES TO RECOVER SAME WHERE APPELLANT THEBES WAS DEAD?

WHETHER THE TRIAL COURT ERRED IN RULING THAT THE DISCOVERY CONDUCTED PRIOR TO THE DEATH OF APPELLANT THEBES CAUSED A WAIVER OF THE DEAD MAN'S RULE AND IN REFUSING TO INVOKE THE RULE AND PROHIBIT THE APPELLEES FROM TESTIFYING AS WITNESSES ON THE GROUND OF INCOMPETENCY?

■ Appellant argues that it was error to allow the recovery of punitive damages where the tortfeasor died after the

---

1. Appellant also claims that the trial court erred when it denied the motion of appellant to continue the case and when it entered three evidentiary rulings. We address these claims and find them without merit in a Memorandum filed contemporaneously with this Opinion. 447 Pa.Super. 340, 669 A.2d 378 (1996).

institution of suit but prior to trial. This issue has not previously been addressed by this Court.[2] Appellees argue that the Pennsylvania Survival Act, 42 Pa.C.S. § 8302,[3] compels the conclusion that punitive damages may be recovered from the estate of a deceased tortfeasor. While the statute may provide some support for appellees' argument, we do not find the contention controlling since punitive damages are an element of damages and not a separate cause of action. *See: Waltman v. Fahnestock & Co., Inc.,* 792 F.Supp. 31 (E.D.Pa. 1992), *aff'd.,* 989 F.2d 490 (3rd Cir.1993); *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800 (1989). *But see Hennigan v. Atlantic Refining Co.,* 282 F.Supp. 667 (E.D.Pa. 1967), *aff'd.,* 400 F.2d 857 (3d Cir.1968) (while there is no mention of damages in the survival act, there is no reason to read into it a limitation on the nature or amount of recovery). The issue before this Court thus becomes whether the purposes for which punitive damages are awarded are served by allowing recovery of punitive damages from the estate of a deceased tortfeasor.

The majority rule among those states which have addressed the issue is that punitive damages are not recoverable from the estate of the tortfeasor,[4] and fourteen states have enacted

**2.** The issue of whether to allow recovery of punitive damages from the estate of a deceased tortfeasor has been addressed twice in the Courts of Common Pleas. In *Schwab v. Bates,* 12 Pa.D. & C.4th 162 (1991), the court allowed the recovery of punitive damages from the deceased's estate on the ground that the public policy considerations involved in deterring drunken driving outweighed the harm suffered by the estate of the deceased defendant. The trial court, in *Morfesi v. Sherman,* 13 Pa.D. & C.4th 552 (1991), a medical malpractice case, held that the speculative nature of the deterrence function of punitive damages was outweighed by the disadvantage imposed on the deceased's representatives, particularly in suits involving nonintentional torts.

**3.** The Pennsylvania Survival Act provides:

All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants.
42 Pa.C.S. § 8302.

**4.** See Restatement (Second) of Torts §§ 908, comment a, 926 (1979); 25 C.J.S. § 125(3) p. 1153 (1966). Of the twenty-seven states that have addressed the issue, twenty-four bar recovery.

legislation that explicitly precludes such a recovery.[5] While there is a split of authority among the courts of those jurisdictions, such as Pennsylvania, which have no statutory provision, the majority of those states also preclude the recovery of punitive damages from the estate of the tortfeasor. The rationale underlying the decision to preclude such recovery is that the primary purpose of imposing punitive damages, the punishment of the tortfeasor, cannot be served by the imposition of exemplary damages upon the wrongdoer's estate.[6] Conversely, the courts in those states that allow the recovery of punitive damages despite the death of the tortfeasor have based their decisions upon policy considerations other than punishment of the tortfeasor.[7]

5. *California,* CAL.PROB.CODE § 573 (West Supp.1984); *Colorado,* COLO.REV.STAT. § 13–20–101 (1973); *Georgia,* GA.CODE ANN. § 9–2–41 (1987); *Idaho,* IDAHO CODE § 5–327 (1987); *Maine,* ME.REV. STAT.ANN. Tit. 18–A, § 3–818 (1981); *Massachusetts,* MASS.ANN. LAWS ch. 230, § 2 (1974); *Mississippi,* MISS.CODE ANN. § 91–7–235 (1972); *Nevada,* NEV.REV.STAT. § 41.100 (1979); *New York,* N.Y.EST.POWERS & TRUSTS LAW § 11–32 (Consol.1974); *Oregon,* OR.REV.STAT. §§ 30.080, 30.020 (1983); *Rhode Island,* R.I.GEN. LAWS § 9–1–8 (1970); *Vermont,* VT.STAT.ANN. Tit. 14 §§ 1451–53 (1974); *Virginia,* VA.CODE § 8.01–25 (1977); and *Wisconsin,* WIS. STAT.ANN. § 895.01 (West 1983).

6. Jay M. Zitter, *Anno., Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor or Person Wronged,* 30 ALR4th 707 § 2 (1984). *See, e.g., Thompson v. Estate of Petroff,* 319 N.W.2d 400 (Minn.1982); *Hayes v. Gill,* 216 Tenn. 39, 390 S.W.2d 213 (Tenn.1965).

7. Currently, Alabama, Texas and West Virginia allow punitive damages to be assessed against the estate of a deceased tortfeasor. *See Hofer v. Lavender,* 679 S.W.2d 470 (Tex.1984) (components of exemplary damages also include reimbursement for losses too remote to be considered as elements of compensatory damages, as well as reimbursement for inconvenience and attorney's fees) and *Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8 (W.Va.1982) (punitive damages also deter others from engaging in similar acts, and provide additional compensation to sufferers from a defendant's reckless and wanton misconduct). In *Ellis v. Zuck,* 546 F.2d 643 (5th Cir.1977), a case involving fraud, the district court initially relied on the following syllogism in holding that Alabama law allows for the recovery of punitive damages from a deceased tortfeasor's estate: as wrongful death actions survive against the personal representative of the decedent and, by statute, all damages recoverable under a wrongful death action are punitive, punitive damages must survive the death of the tortfeasor. That court cited *Shirley v. Shirley,* 261 Ala. 100, 73 So.2d 77 (1954), wherein the Supreme Court of Alabama stated that punitive damages also provide a general deter-

■ An award of punitive damages under Pennsylvania law serves a deterrence function as well as a punishment function. While the public policy of punishing the wrongdoer for his intentional tort is defeated by the death of the tortfeasor, the deterrence function of a punitive damage award is not affected by the death of the tortfeasor. *See: Perry v. Melton, supra,* 299 S.E.2d at 12. The specter of the penalty imposed by punitive damages is intended to deter others from engaging in like conduct, thereby serving a public as well as a private interest.[8] The vital public policies served by punitive damage awards, and the ability of our trial courts to prevent a miscarriage of justice in those instances where the award of punitive damages against the estate of the tortfeasor would be *unjust,* compel us to find that *where suit is instituted prior to the death of the tortfeasor, and the tortfeasor dies before the completion of trial, punitive damages may be assessed against the estate of the deceased tortfeasor.* We, therefore, find that the trial court properly held that punitive damages were recoverable from the estate of Darwin Thebes.

We acknowledge that the recent trend in other jurisdictions has been to preclude the recovery of punitive damages from estates, even in those states that accept deterrence as a legitimate public policy goal of punitive damages. The Dis-

rent against similar actions by others, as evidence of the Supreme Court's intent that recovery of punitive damages from estates not be limited to wrongful death actions.

8. For the proposition that punitive damages are assessed in Pennsylvania as a means of deterring similar acts by others, in addition to punishing the wrongdoer, *see: Delahanty v. First Pennsylvania Bank,* 318 Pa.Super. 90, 464 A.2d 1243, 1263 (1983); *Giroux v. Sherman,* 807 F.Supp. 1182, 1190 (E.D.Pa.1992); *Esmond v. Liscio,* 209 Pa.Super. 200, 224 A.2d 793, 799 (1966). Appellees also offer an additional, unique perspective to the general deterrence rational. They argue that an award of punitive damages will not just deter others from engaging in similarly willful misconduct, but will also deter alleged tortfeasors who, like Mr. Thebes, seek to "profit" by committing suicide before an award of punitive damages has vested. A thorough search has failed to discover a similar argument put forth by any court, state legislature, or commentator on the issue. (In *Doe v. Colligan,* 753 P.2d 144 (Ak 1988), a case that involved a suit brought against the estate of an alleged child molester who committed suicide prior to trial, the Alaska Supreme Court did not allude to the relevance of the deceased's suicide beyond the fact that it obviated the purpose of punitive damages.)

trict Court, in *Fehrenbacher v. Quackenbush,* 759 F.Supp. 1516 (D.Kan.1991), precluded recovery of punitive damages from the tortfeasor's estate on the basis that it was a vicarious punishment of the innocent heirs of the tortfeasor, despite recognition by the court that "the ultimate purpose [of punitive damages is] to restrain and deter others from the commission of similar wrongs." *Id.* at 1521, *quoting Wisker v. Hart,* 244 Kan. 36, 41, 766 P.2d 168, 172–173 (1988). Similarly, the District Court for the Northern District of Illinois, in *Stafford v. Purofied Down Products Corp.,* 801 F.Supp. 130 (N.D.Ill. 1992), predicted that the Illinois Supreme Court would adopt the majority rule, despite the general deterrent effect of punitive damages, suggesting that the imposition of the burden of punitive damages upon the heirs of the tortfeasor to be analogous to the feudal rule of attainder. *See also: Byrd v. Lohr,* 488 So.2d 138, 139 (Fla.Dist.Ct.App. 5th Dist.1986). The New Mexico Supreme Court, the most recent forum to address the issue, in *Jaramillo v. Providence Washington Ins. Co.,* 117 N.M. 337, 871 P.2d 1343, 1352 (1994), held that punitive damages cannot be recovered from the estate of a deceased tortfeasor based upon the belief of the court that neither the punishment nor deterrence purpose of such damages can be achieved by an award of punitive damages against the estate of a deceased tortfeasor.

Our Supreme Court, in *Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d 800 (1989), in refusing to require proportionality between the amounts awarded by a jury for punitive and compensatory damages, noted:

> If the purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others from similar conduct, then a requirement of proportionality defeats that purpose. It is for this reason that the wealth of the tortfeasor is relevant. In making its determination, the jury has the function of weighing the conduct of the tortfeasor against the amount of damages which would deter such future conduct. In performing this duty, the jury must weigh the intended harm against the tortfeasor's wealth. If we were to adopt the Appellee's theory, outrageous conduct,

which only by luck results in nominal damages, would not be deterred and *the sole purpose of a punitive damage award* would be frustrated. If the resulting punishment is relatively small when compared to the potential reward of his actions, it might then be feasible for a tortfeasor to attempt the same outrageous conduct a second time. If the amount of punitive damages must bear a reasonable relationship to the injury suffered, then those damages probably would not serve as a deterrent. It becomes clear that requiring punitive damages to be reasonably related to compensatory damages would not only usurp the jury's function of weighing the factors set forth in Section 908 of the Restatement (Second) of Torts, but would also prohibit victims of malicious conduct, who fortuitously were not harmed, from deterring future attacks.

*Kirkbride v. Lisbon Contractors, Inc., supra* at 103–104, 555 A.2d at 803 (emphasis added).[9]

Mindful of the analyses provided by the courts in those jurisdictions which prohibit recovery of such damages from the deceased tortfeasor's estate, we expressly limit our holding in the instant case to those instances where suit was commenced prior to the death of the tortfeasor, since we believe that where the injured plaintiff has made certain decisions concerning the institution of suit and/or preparation for trial, the death of the tortfeasor prior to the entry of the verdict is not a sufficient basis upon which to preclude the submission of the issue of punitive damages to the jury.

While one of the two purposes served by an award of punitive damages is defeated by the death of the tortfeasor, the deterrence effect of the award is unaltered, and perhaps

---

**9.** Pennsylvania Civil Jury Instruction 14.03 also recognizes the two purposes served by punitive damage awards:

b. [Where suit is brought or maintained against a deceased alleged tortfeasor] If you find that the conduct of the deceased was outrageous, you may award punitive damages against the deceased's estate, in addition to any compensatory damages, to punish the deceased's conduct and to deter others from the commission of like acts.

14.03 (Civ) Punitive Damages Under the Survival Act (1976).

even enhanced, by the assessment of punitive damages against the estate of the tortfeasor. Moreover, the jury will be aware that the award is being imposed against the estate, and will, therefore, in the consideration of punitive damages, be mindful of the value of the estate. The jury in the instant case, moreover, aware that the total value of the gross estate was $274,017.51, imposed $76,500 in punitive damages based upon its assessment of the need for punishment and/or deterrence under the facts. As our Supreme Court recognized in *Kirkbride v. Lisbon Contractors, Inc., supra* at 104–105, 555 A.2d at 804, in those instances where a jury award of punitive damages against the estate of a deceased tortfeasor shocks the conscience of the court, the trial court may grant a remittitur.

 The further argument raised by appellant in support of her request for a new trial is that the trial court committed reversible error when it ruled that the Dead Man's Statute had been waived by the discovery conducted by the parties prior to the death of Darwin Thebes. Section 5930 of the Judicial Code, 42 Pa.C.S. § 5930, commonly referred to as the Dead Man's Act, provides, in pertinent part:

[I]n any civil action or proceeding, where any party to a thing or contract in action is dead ... and his right thereto or therein has passed ... to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, *nor any other person whose interest shall be adverse to the said right of such deceased ..., shall be a competent witness to any matter occurring before the death of said party ....*

42 Pa.C.S. § 5930 (emphasis added).

The Dead Man's Act is an exception to the general rule of evidence in this Commonwealth that: "no interest or policy of law ... shall make any person incompetent as a witness." 42 Pa.C.S. § 5921. "The purpose of this Act is to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent to give testimony thereon favorable to himself and adverse to the decedent, which the

latter's representative would be in no position to refute."
*Olson v. North American Industrial Supply Inc.*, 441 Pa.Super. 598, 609–610, 658 A.2d 358, 364 (1995), *quoting Stathas v. Wade Estate*, 251 Pa.Super. 269, 270–272, 380 A.2d 482, 483 (1977). *Accord: In re Estate of Hall*, 517 Pa. 115, 127–128, 535 A.2d 47, 53 (1987).

Appellant's decedent, Darwin Thebes, deposed G.J.D. and her son D.K. prior to his death and himself was deposed by appellees. The trial court found that the right of Geraldine Johnson as the representative of Thebes' estate to assert the Dead Man's Act had been waived by the discovery undertaken by Thebes prior to his death. Appellant contends that since she did not conduct any discovery and did not use the deposition testimony at trial, her right to assert the Act should not be found to be waived. We disagree.

The protection of the Dead Man's Act is waived by:

the taking of a deposition of a witness concerning any occurrences involving a deceased party ... and ... the mere taking of a deposition amounts to a waiver even though the deposition is never filed or is not used in evidence by the party taking it.

*Perlis v. Kuhns*, 202 Pa.Super. 80, 83, 195 A.2d 156, 158 (1963). *Accord: Brown v. Saladoff*, 209 Pa.Super. 263, 228 A.2d 205, 206 (1967). Despite appellant's insistence otherwise, discovery taken prior to the death of the deceased party, whether used at trial or not, constitutes waiver of the Dead Man's Act. Nor does the fact that the discovery was conducted prior to the death of the defendant Thebes alter the finding of waiver. The Pennsylvania Supreme Court in *Anderson v. Hughes*, 417 Pa. 87, 208 A.2d 789 (1965), found that the trial court had erred in refusing to find the Dead Man's Act waived where one of the defendants died after institution of suit but prior to trial where a deposition of the plaintiff had been taken by the defendant, just as in the present case. We are thereby obliged to reject as meritless the argument that the trial court erred in finding that the Dead Man's Act was waived. Equitable considerations would require such a result in any event, since, as the eminent Judge Robert I. Shadle of the Court of

Common Pleas of York County observed, in *Brennan v. Bell,* 37 Pa.D. & C.2d 707, 711 (1965), "[i]t seems, fundamentally unfair to permit a decedent's estate, or the decedent before his death, to discover all relevant facts from his adversary, and then at trial to seal his opponent's lips by the Dead Man's Rule." *See also: Treharne v. Callahan,* 288 F.Supp. 131 (W.D.Pa.1968).

Judgment affirmed.