**Karen Sue STONE, as executrix of the estate of Shawn Edward Stone, deceased, Plaintiff,**

v.

**CSX TRANSPORTATION, INC., a Virginia corporation, and the National Rail Passenger Corporation, d/b/a AMTRAK, a District of Columbia corporation, Defendants.**

**No. Civ.A. 3:97–1177.**

United States District Court, S.D. West Virginia, Huntington Division.

Feb. 22, 1999.

At issue are state negligence claims and the federal preemption provision of the Federal Railroad Safety Act, 49 U.S.C. § 20106.

## STATEMENT OF THE CASE

Shawn Stone was driving his Geo Metro across the Ventroux Hollow grade crossing on January 26, 1997, when he collided with an Amtrak passenger locomotive and was killed instantly. Shawn was nineteen years old at the time of his death. His mother, the executrix of his estate, filed suit in this Court on the basis of diversity jurisdiction against defendants CSX Transportation, Inc. ("CSX") and the National Rail Passenger Corporation ("Amtrak"). The complaint asserted claims based on negligence and gross negligence and sought both compensatory and punitive damages.

The following specific claims are at issue in this lawsuit: (1) CSX was negligent or grossly negligent because it failed to issue a slow order in response to a false activation notice at the Ventroux Hollow grade crossing; (2) CSX was negligent or grossly negligent because the signal at the Ventroux Hollow grade crossing had a history of frequent false activations; (3) CSX was negligent because it failed to perform proper maintenance and inspections; (4) Amtrak was negligent because it failed to give adequate warning of its approach at the grade crossing; (5) Amtrak was negligent in using an engineer who was not adequately familiar with the track; (6) Amtrak was negligent because its engineer failed to make an emergency brake application instead of a full service brake application; and (7) CSX is liable for punitive damages.

The factual underpinning relied upon by the plaintiff to support her claims is as follows: Ventroux Hollow, because of the terrain, is an isolated area in Putnam County, West Virginia. The only way in and out of Ventroux Hollow is over the railroad tracks owned and maintained by

Richard Neely, Neely & Hunter, Charleston, WV, for plaintiff.

Marc E. Williams, Robert L. Massie, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

This matter is before the Court on defendants' motion for summary judgment.

CSX. The grade crossing is protected by automatic crossing gates and mast-mounted flashing lights. The sight lines at the crossing are very short. Because of the terrain, the railroad tracks curve and an individual, looking from the vantage point of the grade crossing, can see the tracks only a fairly short distance to the right and to the left. Likewise, the train engineer can see the crossing only when the train is a few seconds away.

On the day before the accident, in the late afternoon, a CSX employee was called out to the grade crossing to make repairs on a broken gate arm. Sometime between then and the next morning, the gate activated as though a train were approaching and remained in this mode through the accident, which occurred shortly after 10:00 a.m. Shawn Stone drove across the grade crossing, around the lowered automatic gate arm and through the flashing lights. He was struck by the oncoming train. A subsequent investigation revealed a damaged tuneable joint coupler, which may have caused a false activation of the signal apparatus.

The preceding facts are undisputed. The plaintiff made additional assertions, though, upon which her claims depend. First, she claimed that the signal apparatus regularly malfunctioned. That is, the gates went down and the lights flashed indicating the imminent arrival of a train, even though no train was actually coming. The plaintiff asserted that the residents and visitors to Ventroux Hollow became accustomed to these false activations and learned to ignore them. When the signal apparatus activated, drivers would stop, look, listen, and proceed around the lowered gate arms and through the flashing lights. They developed, the plaintiff claimed, a false sense of security and a lowered expectation of danger because of the regular occurrence of false activations. Furthermore, drivers at this grade crossing have no other route to pursue in or out of Ventroux Hollow.

The plaintiff claimed that, on the morning of the accident, there was a false activation. She further claimed that CSX actually knew that the signal apparatus was falsely activated, but did not respond appropriately. The plaintiff asserted that CSX regularly failed to do proper maintenance and inspections, which would have prevented problems or corrected them in a more timely fashion. She asserted that maintenance and inspection reports were done improperly or not at all. She also claimed that, despite repeated complaints, CSX failed to rectify the situation and the problem with repeated false activations did not improve.

The defendants filed the pending motion for summary judgment. The defendants denied any wrongdoing or liability. They asserted that any signal apparatus problems resulted not from any acts or omissions on their part but rather from vandalism. They also claimed that many of plaintiffs claims are preempted by federal law. The matter has been briefed and is now mature for the Court's decision.

## ANALYSIS

### A. The Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.* at 56(c). In discussing this standard, the Supreme Court held that:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.... [A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In resolving the motion, the court must not make credibility determinations or weigh the evidence, as that function is reserved for a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in the non-moving party's favor. *Id.*

Nevertheless, an adverse party may not rest upon its pleadings or mere conclusory allegations, but rather must set forth specific facts showing that there is a genuine issue for the finder of fact to resolve. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted).

The defendants based their motion for summary judgment on several different grounds. They asserted that some of the plaintiff's state tort claims are preempted by federal law, namely, the Federal Railroad Safety Act, 49 U.S.C. § 20101 *et seq.* With regard to the remaining claims, they challenged the sufficiency of the plaintiff's evidence or the legal basis for the claim.

The Court will first address the federal preemption issues.

## B. Federal Preemption Under the Federal Railroad Safety Act

The Federal Railroad Safety Act (the "FRSA"), 49 U.S.C. § 20101 *et seq.,* was enacted to promote railroad safety and reduce accidents. *Id.* To that purpose, the Secretary of Transportation was authorized to make regulations and issue orders. *Id.* at § 20103. Federal laws, regulations and orders may preempt state law, as provided by 49 U.S.C. § 20106, which contains both an express preemption provision and an exception thereto. Section 20106 states:

> Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order—
>
> (1) is necessary to eliminate or reduce an essentially local safety hazard;
>
> (2) is not incompatible with a law, regulation, or order of the United States Government; and
>
> (3) does not unreasonably burden interstate commerce.

In *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the Supreme Court discussed the preemptive effect of the FRSA.[1] In *Easterwood,* the plaintiff's decedent was struck by a train and killed. The plaintiff brought suit under Georgia

---

1. The Court in *Easterwood* dealt with the predecessor version of the Federal Railroad Safety Act, previously codified at 45 U.S.C. § 421 *et seq.* On July 5, 1994, the FRSA was recodified at 49 U.S.C. §§ 20101–21311. Although minor changes were made to the statutory language, no substantive changes occurred. Consequently, cases interpreting the previous version of the FRSA, including *Easterwood,* are still good law. *See O'Bannon v. Union Pacific Railroad Co.,* 960 F.Supp. 1411, 1416 n. 3 (W.D.Mo.1997).

law, asserting that the railroad was negligent because of the train's excessive speed and the railroad's failure to maintain proper warning signs. The railroad asserted that state tort law was preempted by the FRSA. The Supreme Court held that common law negligence duties fall within the scope of the preemption statute. *Id.* at 664, 113 S.Ct. 1732. However, federal preemption occurs only when the Secretary issues regulations that "substantially subsume the subject matter of the relevant state law." *Id.* The Court held that the excessive speed claim was preempted because a comprehensive set of regulations covered the topic of train speeds. However, the warning signs claim was not preempted, because the Secretary's warning signs regulations were not comprehensive and dealt only with specific, clearly defined circumstances not present in *Easterwood.* Therefore, with regard to the warning signs claim, state tort law continued to govern.

Section 20106 also contains an exception to the preemption provision. State law that is in addition to, or more stringent than, the federal law may remain in force "when necessary to eliminate or reduce an essentially local safety hazard." It must, however, meet two additional factors. The state law duty must not be incompatible with federal law and must not burden interstate commerce. In *Easterwood,* the Court rejected plaintiff's claim that this exception to the preemption provision applied. Although the Court held that excessive speed claims were preempted under the FRSA, the Court did not address the extent to which speed-related tort law duties are preempted, such as the obligation to slow down or stop to avoid a "specific, individual hazard." The Court reserved that question for another day. The Court stated that:

> Petitioner is prepared to concede that the pre-emption of respondent's excessive speed claim does not bar suit for breach of related tort law duties, such as the duty to slow or stop a train to avoid

a specific, individual hazard.... As respondent's complaint alleges only that petitioner's train was traveling too quickly given the "time and place," ... this case does not present, and we do not address, the question of FRSA's pre-emptive effect on such related claims.

*Id.* at 675 n. 15, 113 S.Ct. 1732.

### C. Preempted Claims

Applying the law to the facts of this case, the Court must conclude that the federal preemption analysis is relevant to the following three claims: (1) CSX was negligent or grossly negligent because it failed to issue a slow order in response to a false activation notice at the Ventroux Hollow grade crossing; (2) CSX was negligent or grossly negligent because the signal at the Ventroux Hollow grade crossing had a history of frequent false activations; and (3) CSX was negligent because it failed to perform proper maintenance and inspections. The Court will address these claims *seriatim.*

**Claim 1: CSX was negligent or grossly negligent because it failed to issue a slow order in response to a false activation notice at the Ventroux Hollow grade crossing.**

The plaintiff argued that, in this particular instance, CSX had actual knowledge that there was a false activation and yet failed to issue a slow order, which was required by the regulations under the circumstances. The Secretary has issued comprehensive regulations on signal malfunctions. *See* 49 C.F.R. §§ 234.1 – 234.6 (Subpart A) and 49 C.F.R. §§ 234.101 – 234.109 (Subpart C). These federal regulations set the preemptive duty with which the railroad must comply when it has actual knowledge of an existing false activation.

■ A false activation indicates to the driver that it is not safe to cross the railroad tracks when it actually is safe to do so. *See* 49 C.F.R. § 234.5. False activations are governed by § 234.107. In order

to trigger its required duties under this section, a railroad must first receive a credible report of a false activation. *See* 49 C.F.R. §§ 234.5, 234.107. For purposes of the summary judgment motion, the Court must assume that the railroad did have a credible report because, according to plaintiff's allegation, the CSX repairman knew that the gate was falsely activating. Under the regulations, a railroad receiving a credible report of a false activation must promptly warn highway users, railroad employees and law enforcement personnel. *See* 49 C.F.R. § 234.107(a) –(c). The railroad must also take certain specified actions when a false activation occurs. If there is a flagger for each direction of traffic, or if there is one uniformed police officer at the crossing to warn highway users, then trains may proceed through the crossing at normal speed. *See* 49 C.F.R. § 234.107(c). *See also* Appendix B. Otherwise, trains may only proceed with caution through the crossing at a speed which may not exceed 15 miles per hour. *See* 49 C.F.R. § 234.107(c). The train's audible warning device must be activated as well. *See* 49 C.F.R. § 234.107(d). Civil and criminal penalties may be imposed for failure to comply with these provisions. *See* 49 C.F.R. § 234.6. and Appendix A.

■ The critical element of plaintiff's claim under this theory is the railroad's actual knowledge that a false activation began sometime before and continued throughout the time of the collision. The defendant disputed this allegation but conceded that none of the safeguards required in response to a known false activation were followed (i.e., slowed speed or flagmen at crossing). Therefore, if the plaintiff proves actual knowledge by the railroad of an existing false activation at the time this train approached the crossing and failure of the railroad to comply with the regulations, the plaintiff has established a prima facie case in that the negligence asserted is a violation of the federal regulation. The plaintiff will have the opportunity to show that CSX negligently failed to meet the specific requirements of 49 C.F.R. Part 234. Summary judgment is therefore inappropriate to resolve this claim.

**Claim 2: CSX was negligent or grossly negligent because the signal at the Ventroux Hollow grade crossing had a history of frequent false activations.**

The plaintiff argued that repeated false activations caused or contributed to Shawn Stone's accident because he was forced, like other drivers, to either remain trapped in Ventroux Hollow for long periods of time at great inconvenience to himself and others or to take a chance and cross the tracks. This claim is clearly preempted by virtue of the regulations discussed above, 49 C.F.R. §§ 234.1–234.6 (Subpart A) and 49 C.F.R. §§ 234.101–234.109 (Subpart C). The question remains, however, whether the local hazard exception to the preemption provision applies as well. Under this exception, found in the last part of 49 U.S.C. § 20106, state law may yet govern if the Court determines that the three factors specified have been established.

The first factor to consider is whether the local rule, in this case state negligence law, "is necessary to eliminate or reduce an essentially local safety hazard." The plaintiff argued that a more stringent standard is required because the federal regulations are not stringent enough, in the unique circumstances presented, to protect the railroad and the public. The plaintiff asserted that, because of the history of frequent false activations, a stricter standard is required to either "eliminate or reduce" the danger at the crossing.

The Ventroux Hollow grade crossing, is, of course, the "essentially local safety hazard" in this analysis. A "local safety hazard" was described in *Easterwood* as a "specific, individual hazard." *Easterwood,* 507 U.S. at 675 n. 15, 113 S.Ct. 1732. It "cannot be statewide in character and cannot be capable of being adequately encompassed within uniform, national standards." *O'Bannon v. Union Pacific Rail-*

road Co., 960 F.Supp. 1411, 1420–21 (W.D.Mo.1997). *See also Bowman v. Norfolk Southern Railway Co.,* 832 F.Supp. 1014 (D.S.C.1993), *aff'd mem.,* 66 F.3d 315 (4th Cir.1995). A "specific, individual hazard" is, for example, a child standing on the roadway. *See O'Bannon,* 960 F.Supp. at 1420 n. 10 (citing *Bashir v. National Railroad Passenger Corp.,* 929 F.Supp. 404, 412 (S.D.Fla.1996), *aff'd,* 119 F.3d 929 (11th Cir.1997)). *See also Cox v. Norfolk & Western Railway Co.,* 998 F.Supp. 679 (S.D.W.Va.1998).

■ Accepting the plaintiff's proof, one must conclude that Ventroux Hollow grade crossing is a dangerous crossing because the sight lines are short and drivers sitting at the crossing cannot see a train coming until it is nearly upon them. Moreover, the only road out of the hollow lies across the railroad tracks. Repeated malfunctions have purportedly had a deleterious effect on the activities of persons living in Ventroux Hollow and frequent visitors to Ventroux Hollow. People trying to go to work, visit the doctor, respond to a family crisis, or pick up children from somewhere are severely constrained.

One signal malfunction can be annoying or disruptive. Frequent malfunctions will eventually have a serious impact on day-to-day activities. Drivers accustomed to false activations would be constantly faced with a Hobson's choice—remain trapped in Ventroux Hollow or venture past the signal apparatus and take your chances on being hit by a train. An activated signal under the circumstances is virtually meaningless. Local residents also purportedly attempted to complain about the repeated malfunctions on many occasions, to no avail. The railroad either did not respond or was not successful in eliminating the frequent recurrences. The malfunctions continued. Local residents had, plaintiff asserted, given up because of their lack of ·success in getting the railroad to respond.

Taking the terrain, the sight lines, and the limited access into consideration, and assuming that there were repeated mal-functions of the signal apparatus at that crossing, the Court would likely conclude that the Ventroux Hollow grade crossing was a local hazard.

Unresolved questions of fact, however, remain at issue, such as whether there actually were repeated signal apparatus malfunctions at the Ventroux Hollow grade crossing. The burden is on the plaintiff to prove its version of the facts to the jury at trial. If the plaintiff can do so, then the Court will likely hold, as a matter of law, that the Ventroux Hollow grade crossing was a "local safety hazard."

In order for the preemption exception to apply, the remaining two factors must also be met. State law must not be incompatible with federal law, and it must not burden interstate commerce. With regard to the second factor, the Court finds that state negligence law is not incompatible with the FRSA, or any other applicable federal law. If the railroad were required to adopt a more stringent standard of care for this particular crossing alone, then the FRSA would not be unduly displaced. There is no danger here, as there was in *Easterwood,* that the exception would swallow the rule. In addition, the actions the railroad would likely be required to take are consistent with those they must take under the FRSA. For example, the plaintiff suggested that trains should have been required to reduce their speed commensurate with the ability to stop, given the limited visibility at this crossing and knowing that the crossing was subject to false activations. In the alternative, for example, the railroad should have treated this crossing as continuously operating under a false activation. It should have issued a slow order for this section of track or positioned flaggers when a train was ·scheduled to reach the crossing. These actions are all required, in various circumstances, under 49 C.F.R. § 234. Accordingly, state law is not inconsistent with federal law. For similar reasons, state law does not unduly burden interstate commerce. Therefore, assuming the plaintiff

meets her burden of proof, as discussed above, the local hazard exception to federal preemption should apply.

The Court cautions that these findings are preliminary only. Determining whether there is a conflict with federal law, or an undue burden on interstate commerce, are questions of law for the Court to resolve, rather than questions of fact for the jury. Although the preemption statute was the focus of the defendants' summary judgment motion, the parties did not devote much of their discussion to the last two factors of the preemption exception analysis. Therefore, the parties would be given an opportunity to address these factors more thoroughly in a hearing before the Court.

If the plaintiff meets her burden of proof and can show that there was a history of frequent signal malfunctions at the Ventroux Hollow grade crossing, then she has established the presence of a local hazard. In that event, the preemption exception applies. If the preemption exception applies, then state negligence law will govern this claim. The plaintiff will have the opportunity to show that CSX was negligent and liable for compensatory damages, or liable for punitive damages if grossly negligent. Under a state negligence theory, CSX must meet the standard of care of a reasonably prudent railroad. If, on the other hand, the plaintiff cannot show that there was a pattern of frequent false activations, then she simultaneously will fail to show the presence of a local hazard and will lose this claim.

■ To the extent the plaintiff asserted that CSX should have issued a slow order to avoid a "specific, individual hazard," summary judgment is inappropriate, for the reasons discussed above. To the extent, however, that the plaintiff may be asserting a general claim that the train was moving too quickly, this claim is preempted under *Easterwood.* The locomotive's event recorder showed that the train was moving at 58 miles per hour. The applicable federal regulation permit-

ted a top operating speed of 60 miles per hour. *See* 49 C.F.R. § 213.9. Therefore, the defendants are entitled to summary judgment on any general claims of excessive speed.

**Claim 3: CSX was negligent because it failed to perform proper maintenance and inspections.**

■ CSX asserted that any maintenance and inspection claims are preempted by the comprehensive set of regulations found at 49 C.F.R. §§ 234.1 – 234.6 (Subpart A) and 234.201 – 234.273 (Subpart D), which cover maintenance, inspection and testing of the grade crossing signal system. These specific regulations are extensive and "substantially subsume the subject matter of the relevant state law." *Easterwood,* 507 U.S. at 664–65, 113 S.Ct. 1732. It appears, however, that the plaintiff may be able to show that the preemption exception also applies to this claim.

The plaintiff asserted that a more stringent standard than that imposed by the federal regulations is necessary because of the history of frequent false activations at this crossing. A stricter standard is required, she claimed, in order to "eliminate or reduce" the safety hazard presented. If the plaintiff can show, as discussed above, a history of frequent false activations, then the Court will likely find the existence of a local safety hazard. If the Court finds that the other two factors are met as well, then the preemption exception may apply.

The plaintiff, however, did not clearly specify the maintenance and inspection duties that she believed were required of the railroad. She did state that CSX did not respond promptly to complaints, which exacerbated the problem, and that it should have done so. She also suggested that more frequent inspections and/or maintenance would have uncovered problems causing false activations more promptly. In the absence of a more clearly defined duty of care, however, the Court is hampered in its attempt to determine

whether the state law duty would conflict with the FRSA or unduly burden interstate commerce. This issue must remain unresolved until trial.

The Court must conclude that genuine issues of material fact preclude summary judgment on this claim. If the plaintiff can show the existence of a local hazard, and the Court can thereafter conclude that the remaining two factors from § 20106 are met, then the preemption exception will apply. If the preemption exception applies, then state law applies to this claim. The plaintiff will have the opportunity to show that CSX was negligent or grossly negligent and that it is entitled to compensatory and punitive damages. Under a state negligence theory, CSX must meet the standard of care of a reasonably prudent railroad. If, however, the preemption exception does not apply, then federal regulations and the FRSA will govern this case. The plaintiff will then be required to show that CSX negligently failed to meet the specific requirements of 49 C.F.R. Part 234 (Subparts A and D).

### D. Remaining Claims

Federal preemption is not relevant to the remaining claims. The defendants challenged those claims on various other grounds, as discussed below.

**Claim 4: Amtrak was negligent because it failed to give adequate warning of its approach at the grade crossing.**

Under West Virginia law,

A bell or steam whistle shall be placed on each locomotive engine, which shall be rung or whistled by the engineer or fireman, at a distance of at least sixty rods [330 yards] from the place where the railroad crosses any public street or highway, and be kept ringing or whistling for a time sufficient to give due notice of the approach of such train before such street or highway is reached . . . .

W.Va.Code § 31-2-8.

■ The defendants asserted that the train's audible warning device was, in fact, sounded appropriately, and that they are entitled to summary judgment. In support of their position, they submitted the deposition of William Noel, an engineer trainee who was present on the train that day. He testified that the engineer, B.J. Ferrell, was blowing the horn as the train approached the crossing. Engineer Ferrell himself also testified that he was blowing the horn before he reached the crossing. Moreover, the printout of the train's event recorder revealed that the horn was sounding prior to reaching Ventroux Hollow. The plaintiff submitted no evidence to contradict the defendants. The defendants are accordingly entitled to summary judgment on this claim.

**Claim 5: Amtrak was negligent in using an engineer who was not adequately familiar with the track.**

■ The railroads claimed that the engineer was well qualified to operate the Amtrak locomotive over the track in question. They submitted the deposition of Engineer Ferrell, who testified that he had been a railroad employee for 42 years, starting as a fireman. He had been an engineer for 20 or 25 years and a passenger train engineer for four or five years. He was quite familiar with the track he was operating on the day of the accident. Even the plaintiff's expert, August Westphal, did not challenge the engineer's training or qualifications. He conceded that the training and certification process was sufficient to prepare Engineer Ferrell for the job. The plaintiff submitted no evidence to create a question of fact with regard to this claim. The defendants are therefore entitled to summary judgment.

**Claim 6: Amtrak was negligent because its engineer failed to make an emergency brake application instead of a full service brake application.**

The plaintiff claimed that if the engineer had made an emergency brake application instead of a full service brake application,

then the train would have slowed down at a faster rate. This in turn would have given Shawn Stone an additional second or two to safely navigate the crossing, or at least to avoid being hit broadside. The plaintiff has some evidence that a reasonably prudent engineer would have applied that emergency brake. The railroads argued that the plaintiff offered no expert testimony to show that using the emergency brake would have prevented the train from hitting the car. Moreover, they asserted that the engineer also had a duty to consider how an abrupt stop would affect the safety of his passengers. The defendants pointed to no federal regulations on this subject.

■ The Court holds that this dispute simply revolves around a question of proximate cause, which, as always, is a question of fact for the jury to decide. *See Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8, 10–11 (1982) (holding that determination of proximate cause is question of fact for jury). *See also Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979) (discussing West Virginia's comparative negligence doctrine). If the plaintiff can show at trial that the use of the emergency brake would have affected the stopping time or distance, the jury must determine whether that could have made a difference in the outcome of this accident. With regard to this claim, material fact questions remain at issue, and summary judgment is inappropriate.

**Claim 7: CSX is liable for punitive damages.**

Summary judgment is also inappropriate with regard to the punitive damages claim. The plaintiff has claims alleging gross negligence outstanding, which might allow the jury to impose punitive damages in the event she prevails upon those claims at trial. Furthermore, the punitive damages issues have been bifurcated from the underlying claims. The Court holds that questions of material fact preclude summary judgment on the punitive damages claim.

**CONCLUSION**

For the reasons set forth above, defendants' motion for summary judgment shall be, and it is hereby, **GRANTED IN PART AND DENIED IN PART.**

**IT IS ORDERED THAT** the defendants are entitled to summary judgment on the following claims: Claim 4—Amtrak was negligent because it failed to give adequate warning of its approach at the grade crossing; and, Claim 5—Amtrak was negligent in using an engineer who was not adequately familiar with the track.

**IT IS FURTHER ORDERED** that the defendants are entitled to summary judgment to the extent plaintiff's complaint may be interpreted as claiming that the train was traveling generally at an excessive rate of speed.

**IT IS FURTHER ORDERED** that, with regard to the claims not specified in the preceding paragraph, summary judgment is **DENIED.**

The Clerk is directed to send a copy of this order to all counsel of record and any unrepresented parties.