# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2689

_____

| | | |
|---|---|---|
| Duluth, Winnipeg, and Pacific Railway Company, a Minnesota corporation, | * * * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| City of Orr, a Minnesota Municipal corporation; Doran Klakoski, in his Capacity as Mayor of Orr; State of Minnesota, | * * * * | Appeal from the United States District Court for the District of Minnesota. |
| | * | |
| Defendants - Appellees, | * | |
| | * | |
| -------------------------- | * | |
| | * | |
| Association of American Railroads, | * | |
| | * | |
| Amicus on Behalf of Appellant. | * * | |

_____

Submitted: April 18, 2008
Filed: June 20, 2008

_____

Before MURPHY, COLLOTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Duluth, Winnipeg & Pacific Railway Company (railway) brought this action seeking a declaratory judgment that the Federal Railway Safety Act preempts a state law limiting the speed of trains passing through Orr, Minnesota. Both sides moved for summary judgment, and the district court concluded that the special law fell within the savings clause of the federal preemption statute. The railway appeals from the adverse judgment. We reverse.

Congress passed the Federal Railway Safety Act (the Act) in 1970 to "promote safety in every area of rail operations," 49 U.S.C. § 20101, and authorized the Secretary of Transportation to make regulations and issue orders "for every area of railroad safety." 49 U.S.C. § 20103. The Secretary, acting through the Federal Railway Administration (FRA), prescribes comprehensive national track safety standards which address maintenance, repair, and inspection of tracks. 49 C.F.R. Part 213.

The Act and regulations are to be "nationally uniform to the extent practicable," and generally preempt state laws covering the same subject matter. 49 U.S.C. § 20106(a). Section 20106(a)(2) nevertheless creates a narrow exception to preemption through its savings clause. That clause allows a state to enact an otherwise preempted law or regulation directed at railroad safety or security if it "(A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States Government; and (C) does not unreasonably burden interstate commerce." The purpose of the savings clause is to "enable the states to respond to local situations not capable of being adequately encompassed within the uniform national standards." H.R. Rep. No. 91-1194, at 11 (1970), reprinted at 1970 U.S.C.C.A.N. 4104, 4117.

The railway owns a Class 4 railroad track running through the municipality of Orr, which is a community of 250 inhabitants located on the shores of Pelican Lake in St. Louis County, Minnesota. The railway runs approximately 16 trains through

Orr each day, some of which carry hazardous material. The track and crossings in Orr meet or exceed state and federal standards. The railway is authorized by 49 C.F.R. § 213.9(a) to set the train speed on this Class 4 track to a maximum of 60 mph. The railway undertook a major track improvement project in 2002, and in December 2003 it chose to increase the maximum speed on the Orr track from 49 to 60 mph but limited the speed around a sharp curve north of Orr to 55 mph.

In March 2004 a special law was introduced in the Minnesota legislature to prohibit railway corporations from permitting a train "to be operated at a speed in excess of 30 [mph] while any portion of the engine or train is within the limits of the City of Orr in St. Louis County." Minn. Special Law 2005, H.F. No. 140 Sec. 101. The railway alleges that Orr officials indicated that the city would withdraw the special law if it would fund a feasibility study to determine if the track could be relocated so that the city could expand its downtown. The railway would not agree, and Orr gave its approval to the special law, which became effective on August 22, 2005.

On November 30, 2005 the railway initiated this action seeking a declaratory judgment that the special law is preempted by the Act and regulations thereunder. Both parties filed motions for summary judgment. The district court concluded that the Act and the regulations in 49 C.F.R. § 213.9 cover the subject matter of train speed and therefore would normally preempt the special law, but that the special law met all three requirements of the § 20106 savings clause. According to the district court, five conditions in Orr combined to create an essentially local safety hazard under § 20106(a)(2)(A) (swampy soil; extreme temperatures; lake, buildings, and propane tanks adjacent to track); the special law was not incompatible with federal law under § 20106(a)(2)(B); and the special law did not unreasonably burden interstate commerce when viewed in isolation (§ 20106(a)(2)(C)). Concluding that the special law was saved from preemption, the district court granted summary judgment in favor of Orr.

The railway appeals, arguing that the special law is not directed at an "essentially local safety hazard" because none of the five factors cited by the district court is uniquely local to Orr and each has been or is capable of being encompassed in the regulations, that the special law is incompatible with 49 C.F.R. § 213.9(a) which authorizes railroads to set speed limits for each class of track, and that it will unreasonably burden interstate commerce in light of the cumulative effect of similar laws which could be enacted in Minnesota and other states. The city of Orr urges us to affirm, arguing that the special law was designed to address a specific local hazard consisting of a unique combination of factors and that the commercial burden imposed by the special law alone is not unreasonable.

Our review of a district court's grant of summary judgment is de novo, and the facts and all reasonable inferences are to be viewed in "the light most favorable to the nonmoving party. In order to create an issue for trial the nonmoving party must produce sufficient evidence to support a verdict in [its] favor based on more than 'speculation, conjecture, or fantasy.'" Doe v. Dep't of Veterans Affairs, 519 F.3d 456, 460 (8th Cir. 2008) (internal quotation omitted). Federal Rule of Civil Procedure 56(c) "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Erenberg v. Methodist Hosp., 357 F.3d 787, 792 (8th Cir. 2004), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

If a state law conflicts with or frustrates federal law, the state law generally is preempted. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663 (1993); see U.S. Const. art. VI. It is the burden of the party advocating preemption under § 20106(a)(2) to show that a federal law, regulation, or order covers the same subject matter as the state law, regulation, or order it seeks to preempt. See Fifth Third Bank ex rel. Trust Officer v. CSX Corp., 415 F.3d 741, 745 (7th Cir. 2005). If that showing is made, the burden shifts to the party resisting preemption to prove that the state law,

regulation, or order meets all three requirements of the savings clause in § 20106(a)(2). These requirements are that the law (A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States; and (C) does not unreasonably burden interstate commerce.

It is undisputed here that federal law covers the same subject matter as the special law since both it and 49 C.F.R. § 213.9 cover train speed, see Easterwood, 507 U.S. at 675 ("§ 213.9(a) should be understood as covering the subject matter of train speed with respect to track conditions"). The question at issue is whether Orr has offered evidence from which a jury could find that the special law meets all three requirements of the savings clause.

The district court found that the combination of five factors present in Orr created an "essentially local safety hazard" under § 20106(a)(2)(A). These factors were 1) the track's proximity to a lake could cause contamination from spillage in case of a derailment; 2) swampy soil upon which the track is built could cause a "continuing problem" for restructuring and rebuilding track in the future; 3) the location of propane tanks close to the tracks created a risk of explosion; 4) churches and businesses were dangerously located between 67 and 278 feet from tracks; and 5) extreme seasonal temperature changes in northern Minnesota limited possible alternatives to speed regulation such as relocation of tracks.

The definition of an "essentially local safety hazard" is a question of first impression in this circuit. Other courts have addressed this issue and "[a]lthough we are not bound by another circuit's decision, . . .a sister circuit's reasoned decision deserves great weight and precedential value." United States v. Auginash, 266 F.3d 781, 784 (8th Cir. 2001) (internal quotations omitted). The courts of appeal which have addressed the issue have defined essentially local safety hazards as "local situations which are not statewide in character and not capable of being adequately

encompassed within national uniform standards."  Nat'l Ass'n of Regulatory Util. Comm'rs v. Coleman, 542 F.2d 11, 14-15 (3d Cir. 1976); also  CSX Transp., Inc. v. Williams, 406 F.3d 667, 672 (D.C. Cir. 2005) (per curiam); Norfolk & W. Ry. v. Publ. Utils. Comm'n, 926 F.2d 567, 571 (6th Cir. 1991); see also Union Pac. R.R. Co. v. Ca. Pub. Utils. Comm'n, 346 F.3d 851, 860 (9th Cir. 2003).  This definition reflects the Act's legislative history:

> The purpose of [the savings clause] is to enable the states to respond to local situations not capable of being adequately encompassed within the uniform national standards. . . .  Since these local hazards would not be statewide in character, there is no intent to permit a state to establish statewide standards superimposed on national standards covering the same subject matter.

H.R. Rep. No. 91-1194, at 11 (1970), reprinted at 1970 U.S.C.C.A.N. 4104, 4117. We are persuaded that the definition adopted by the other circuits is useful and consistent with the statute and its history.

If the local situation is actually statewide in character *or* capable of being adequately encompassed within national uniform standards, it will not be considered an essentially local safety hazard.  There is no dispute that each of the conditions cited by the district court is by itself statewide in character.  Orr's expert acknowledged that "all five of those categories are items that can exist statewide along the [railway's] line." The district court recognized that "many towns have propane tanks and buildings close to railroad tracks, and thousands of miles of track runs [sic] through cold climates."  The Ninth Circuit has noted that "more than 10,000 miles of track are adjacent to waterways in North America," id. at 862, and it is fair to assume that a significant amount of that track closest to the water runs on swampy soil.  Because none of the five conditions cited by the district court is unique to Orr, none of them standing alone may be considered an essentially local safety hazard.

-6-

In each relevant case cited by Orr, at least one of the conditions allegedly contributing to an essentially local safety hazard was unique to the locale. In <u>In the Matter of the Speed Limit for the Union Pac. R.R. through the City of Shakopee</u>, 610 N.W.2d 677 (Minn. Ct. App. 2000), there was a "*truly distinguishing characteristic* of a track that runs between opposing lanes of traffic down the middle of a downtown street*," aggravated by other "common, hazardous" factors. <u>Id.</u> at 686 (emphasis added). Moreover, there was evidence in the <u>Shakopee</u> record that the segment of track to which the regulation applied was "the only place in Minnesota exhibiting this unique combination of factors." <u>Id.</u> at 685. In <u>Monongahela Connecting R.R. Co. v. Pa. Pub. Util. Comm'n</u>, 404 A.2d 1376, 1380 (Pa. Cmwlth. 1979), the court noted that a state order directing a railroad to install a special signal at the approaches of a blind curve "relates to no other section of railroad track in the Commonwealth. It is purely local and is designed to reduce or eliminate a purely local safety hazard." And in <u>Stone v. CSX Transp., Inc.</u>, 37 F. Supp. 2d 789, 796 (S.D. W.Va. 1999), the allegation at issue, that a grade crossing signal on the only road out of town had experienced repeated false activations, could if proven amount to a "local safety hazard." Without proof of repeated false activations at this grade crossing, the combination of "the terrain, the sight lines, and the limited access [to town]" would not constitute a truly unique condition. <u>Id.</u>

It is undisputed in this case that not one of the five cited conditions is unique to Orr. Although Orr's expert opined that "while any one of these issues may be found somewhere else, the magnitude of combining all of them in this small area that is impacted by the railroad is what makes this an essentially local safety hazard," the evidence in the record does not support a conclusion that this combination of conditions could not exist in other places in the state or elsewhere in the country. We conclude that the situation in Orr is not fundamentally local.

In order to show that the situation in Orr is an "essentially local safety hazard" the city must also establish that the local conditions it cites are not capable of being addressed by the national track safety standards. The national track safety standards explicitly address myriad railroad safety concerns including soil conditions, 49 C.F.R. § 213.103 (track must be supported by material which adequately transmits loads, restrains track under stress, and provides drainage). The standards also deal with conditions such as nearby buildings, objects, and bodies of water by excluding them from consideration in setting maximum speeds for various classes of track:

> FRA's current regulations governing train speed do not afford any adjustment of train speeds in urban settings or at grade crossings. This omission is intentional. FRA believes that locally established speed limits may result in hundreds of individual speed restrictions along a train's route, increasing safety hazards and causing train delays. The safest train maintains a steady speed.

Federal Railroad Administration, *Track Safety Standards*, 63 Fed. Reg. 33992, 33999 (1998).

It is undisputed that each condition cited by Orr has been or could be adequately addressed within the national track safety standards, for its own expert acknowledged that all five conditions "are things that the FRA can consider when enacting regulations." The FRA cannot be required to address every conceivable combination of conditions which are individually encompassed within the standards. See, e.g., Union Pac., 346 F.3d at 862 (not essentially local safety hazard because a "steep grade/sharp curve combination can be adequately addressed by national standards"). We conclude that because each particular condition cited by the district court is capable of being covered by the national track safety standards, the combination of these conditions is also.

The Act and regulations are intended to avoid a patchwork of individual speed restrictions along a track. The district court erred in concluding that the conditions in Orr amount to an essentially local safety hazard, for there is no evidence that these conditions amount to a hazard "which is not statewide in character and not capable of being adequately encompassed within national uniform standards," whether analyzed separately or in combination.[1]

Since the special law does not meet the first of the three requirements to come within the § 20106 savings clause, we conclude that it is preempted by 49 C.F.R. § 213.9(a). This conclusion is consistent with attempts by Congress and the Secretary to regulate train speed at the federal level and to give railroads authority to decide these operational issues. Congress passed the Act as a response to an unsafe railroad environment which had resulted in part from regulatory variations from state to state. 1970 U.S.C.C.A.N. at 4109 ("The Committee does not believe that safety in the Nation's railroads would be advanced sufficiently by subjecting the national rail system to a variety of enforcement in 50 different judicial and administrative systems.").

For these reasons we reverse the judgment of the district court and remand for entry of judgment in favor of the railway.

_____

[1]We have found no case other than Shakopee in which a court has held that a *citywide* speed limit addresses an essentially local safety hazard. The other cases upholding state regulations on train speed have addressed dangers specific to particular crossings. Some courts have concluded that an entire city *cannot* amount to an "essentially local safety hazard" and therefore held that citywide speed limits are preempted because they fail the first requirement of the savings clause. See Landrum v. Norfolk S. Corp., 836 F. Supp. 373, 375 (S.D. Miss. 1993); Santini v. Consol. Rail Corp., 505 N.E.2d 832, 838 (Ind. App. 1987).