# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2784

_____

| | | |
|---|---|---|
| BNSF Railway Company; Duluth, Missabe & Iron Range Railway Company; National Railroad Passenger Corporation, doing business as Canadian Pacific Railway; Otter Tail Valley Railroad Company; Inc.; Union Pacific Railroad Company, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | |
| | * | Appeal from the United States |
| Appellants, | * | District Court for the |
| | * | District of Minnesota. |
| v. | * | |
| | * | |
| Lori Swanson, in her official capacity as Attorney General of the State of Minnesota, | * <br> * <br> * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 18, 2008
Filed: July 3, 2008

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

BEAM, Circuit Judge.

Here, we must determine whether the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101 et seq., preempts Minnesota statute section 609.849. Appellant railroads sought a declaratory judgment that the Minnesota statute was preempted by

the FRSA as a result of the Internal Control Plans regulation (ICP), adopted pursuant thereto by the Federal Railroad Administration (FRA) at 49 C.F.R. § 225.33(a).  The district court held that the FRSA preempted subsection (a)(2) of the Minnesota statute but did not preempt subsection (a)(1).  Therefore the court, granted in part and denied in part the railroads' motion for summary judgment, enjoined the enforcement of subsection 609.849(a)(2) against the railroads but refused to enjoin enforcement of subsection 609.849(a)(1).  The railroads appeal.  Because we find that the ICP "covers the subject matter" of that addressed in each section of the Minnesota statute, we reverse.

## I.     BACKGROUND

Enacted in 2005, the Minnesota criminal statute at issue provides:

Railroad that obstructs treatment of an injured worker
(a)     It shall be unlawful for a railroad or person employed by a railroad to intentionally:
(1)     deny, delay, or interfere with medical treatment or first aid treatment to an employee of a railroad who has been injured during employment; or
(2)     discipline, harass, or intimidate an employee to discourage the employee from receiving medical attention or threaten to discipline an employee who has been injured during employment for requesting medical treatment or first aid treatment.
(b)     Nothing in this section shall deny a railroad company or railroad employee from making a reasonable inquiry of an injured employee about the circumstance of an injury in order to gather information necessary to identify a safety hazard.
(c)     It is not a violation under this section for a railroad company or railroad employee to enforce safety regulations.

(d)     A railroad or a person convicted of a violation of paragraph (a), clause (1) or (2), is guilty of a misdemeanor and may be fined not more than $1,000 but is not subject to an incarcerative sanction.

Minn. Stat. § 609.849.

In their declaratory judgment action, the railroads claimed that federal legislation already covered the subject matter addressed by the Minnesota statute. The FRA promulgated a regulation in 1996 that contains language similar to that in the Minnesota statute, and forms the basis for the railroads' challenge in this case. Codified at 49 C.F.R. § 225.33, and entitled "Internal Control Plans," subsection (a)(1) of the ICP provides:

(a)     Each railroad shall adopt and comply with a written Internal Control Plan that shall be maintained at the office where the railroad's reporting officer conducts his or her official business.  Each railroad shall amend its Internal Control Plan, as necessary, to reflect any significant changes to the railroad's internal reporting procedures.  The Internal Control Plan shall be designed to maintain absolute accuracy and shall include, at a minimum, each of the following components:
(1)     A policy statement declaring the railroad's commitment to complete and accurate reporting of all accidents, incidents, injuries, and occupational illnesses arising from the operation of the railroad, to full compliance with the letter and spirit of FRA's accident reporting regulations, and to the principle, in absolute terms, *that harassment or intimidation of any person that is calculated to discourage or prevent such person from receiving proper medical treatment or from reporting such accident, incident, injury or illness will not be permitted or tolerated and will result in some stated disciplinary action against any employee, supervisor, manager, or officer of the railroad committing such harassment or intimidation.*

49 C.F.R. § 225.33 (emphasis added).

-3-

Conducting its preemption analysis, the district court compared the two acts and held that the ICP did not "cover the subject matter" of subsection (a)(1) of the Minnesota statute. Thus, the court held subsection (a)(1) of the Minnesota statute enforceable against the railroads.

As to the specific dispute on appeal concerning the reach of subsection (a)(1) of the Minnesota statute, the court held that the ICP prohibits "harassment or intimidation of any person that is calculated to discourage or prevent such person from receiving proper medical treatment," while subsection (a)(1) of the Minnesota statute states that a railroad or its employees may not "deny, delay, or interfere with medical treatment or first aid treatment to an employee of a railroad who has been injured during employment." Especially in light of the FRSA's solicitude for state law, the court held the two statutes addressed wholly separate considerations–"[w]ithholding or delaying treatment [as contemplated by the state statute] is entirely different conduct from intimidating or harassing the injured person in an attempt to prevent treatment [as contemplated by the ICP regulation]." The court also pointed out that the Minnesota statute went on in subsection (a)(2) to cover harassment and other behavior discussed in the ICP, further supporting the conclusion that (a)(1) was intended to cover different behavior. The court finally held that the ICP contained no provision requiring "prompt" medical treatment. "While the ICP Regulation prohibits discouragement or prevention of proper medical treatment, it does not place an affirmative duty on railroads to actually provide prompt medical treatment."

## II.   DISCUSSION

We review the district court's determination concerning the preemption of the FRSA de novo. In re Derailment Cases, 416 F.3d 787, 792 (8th Cir. 2005). We also review de novo the district court's grant of summary judgment, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. Duluth, Winnipeg, & Pacific Ry. Co. v. City of Orr, No. 07-2689, 2008 WL 2467924 at *2

(8th Cir. June 20, 2008). "In order to create an issue for trial the nonmoving party must produce sufficient evidence to support a verdict in [its] favor based on more than speculation, conjecture, or fantasy." Id. (internal quotations omitted) (alteration in original).

If a state law conflicts with or frustrates federal law, the state law generally is preempted. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663 (1993).

> It is the burden of the party advocating preemption under § 20106(a)(2) to show that a federal law, regulation, or order covers the same subject matter as the state law, regulation, or order it seeks to preempt. If that showing is made, the burden shifts to the party resisting preemption to prove that the state law, regulation, or order meets all three requirements of the savings clause in § 20106(a)(2). These requirements are that the law (A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States; and (C) does not unreasonably burden interstate commerce.

City of Orr, 2008 WL 2467924 at *2 (citations omitted).

Congress passed the FRSA in 1970 to "promote safety in every area of railroad operations," 49 U.S.C. § 20101, and authorized the Secretary of Transportation to make regulations and issue orders "for every area of railroad safety." Id. § 20103(a). The FRSA and regulations are to be "nationally uniform to the extent practicable," and generally preempt state law covering the same subject matter. Id. § 20106(a). The question at issue is whether the ICP covers the same subject matter as subsection (a)(1) of the Minnesota statute. The railroads argue that the court construed the ICP too narrowly and the Minnesota statute too broadly. Minnesota's argument is just the opposite–it posits that the railroads seek to interpret the ICP too broadly and the state statute too narrowly.

-5-

The general preemption test under the FRSA is whether the Secretary of Transportation has "prescribe[d] a regulation or issue[d] an order covering the subject matter of the State requirement." Id. § 20106(a)(2). Regulations "cover" the subject matter of a safety concern where they "comprise, include, or embrace [that concern] in an effective scope of treatment or operation." CSX Transp., Inc., 507 U.S. at 664-65. The ICP must "substantially subsume the subject matter of the relevant state law," not merely "touch upon" or "relate to" that subject matter. Id. at 664. What is important is that the FRA has considered the "subject matter" and has addressed it "in an effective scope of treatment or operation." Id. at 664-65. We approach our preemption analysis mindful of a court's reluctance to find preemption when interpreting a federal statute pertaining to a subject traditionally governed by state law. Id. at 664.

This circuit has previously dealt with preemption issues under the FRSA in similar contexts, although not in the area of specific state legislation. In In re Derailment Cases, the Eighth Circuit held that various FRA regulations concerning railroad inspections of freight cars preempted a common law claim in which the plaintiffs asserted that they were injured as a result of negligent inspections. 416 F.3d at 794. We explained that "a regulatory framework need not impose bureaucratic micromanagement in order to substantially subsume a particular subject matter." Id.

Likewise, in Peters v. Union Pac. R.R. Co., 80 F.3d 257 (8th Cir. 1996), the court held that the Department of Transportation's locomotive engineer certification regulations preempted a state common law conversion claim. The plaintiff had argued that, because the regulations did not expressly address the right of a certified engineer to possess a certification card, they did not preempt his state law claim. The panel disagreed, explaining that since the regulations set out a comprehensive administrative adjudication scheme for handling certification disputes, they necessarily covered the subject matter of the plaintiff's conversion claim and therefore preempted that claim as a matter of federal law. Id. at 262.

Here, the district court read the ICP too narrowly. While the federal statute does not expressly deal with the "delay" or "interference" with medical treatment as the Minnesota statute specifically states in subsection (a)(1), the ICP addresses the identical safety concerns and creates an administrative regulatory framework that both prohibits all employer interference with employee medical treatment and establishes an enforcement mechanism to punish such interference. Any state legislation concerning delay or interference with medical treatment is substantially subsumed by the federal prohibition against harassment or intimidation of any person calculated to discourage or prevent such person from receiving proper medical treatment.

> Generally, determining the safety concerns that a state or federal requirement is aimed at will necessarily involve some level of generalization that requires backing away somewhat from the specific provisions at issue. Otherwise a state law could be preempted only if there were an identical federal regulation, and . . . Easterwood teaches that this is not so.

Burlington N. & Santa Fe Ry. Co. v. Doyle, 186 F.3d 790, 796 (7th Cir. 1999) (citations omitted).[1]

The district court's conclusion that the Minnesota statute actually establishes an "affirmative duty" on railroads to provide prompt medical treatment is not supported by the statutory language. Nothing in the state statute supports that conclusion. Requiring a railroad not to deny, delay or interfere with medical treatment does not,

---

[1]Minnesota also makes much of its state's severability jurisprudence, arguing that because subsection (a)(1) of the state statute is severable from subsection (a)(2), Cellco P'ship v. Hatch, 431 F.3d 1077, 1083-84 (8th Cir. 2005), cert. denied, 127 S. Ct. 433 (2006), subsection (a)(1) necessarily has a meaning separate and independent from subsection (a)(2)'s prohibition on harassment and intimidation. This is much to do about nothing because our determination today is whether subsection (a)(1), on its own, is preempted by the ICP, and we determine that it is.

even inferentially, require that the railroad affirmatively provide prompt treatment. No construction of that language, fairly read, supports such an interpretation. And, even if we were to entertain such an erroneous construction of the Minnesota statute, any requirement of "prompt" treatment would likewise be subsumed by the ICP, which addresses "proper" medical treatment in a general sense.

Because Minnesota does not claim that this legislation falls within the savings clause, we do not address whether the legislation (A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States; and (C) does not unreasonably burden interstate commerce. 49 U.S.C. § 20106(a)(2)(A), (B), (C); City of Orr, 2008 WL 2467924 at *2-5. Additionally, we need not consider how the FRA investigates complaints and issues citations pursuant to the ICP or what the Secretary's purpose was when it enacted the ICP. While these are interesting issues, our inquiry is only whether the subject matter of the ICP substantially subsumes that of the Minnesota statute. Easterwood, 507 U.S. at 664. We conclude today that it does.

## III.    CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand.

_____