# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3636

_____

Steven L.D. Grade,                           *
                                             *
            Appellant,                       *
                                             *   Appeal from the United States
      v.                                     *   District Court for the
                                             *   District of Nebraska.
BNSF Railway Company,                        *
a Delaware Corporation,                      *
                                             *
            Appellee.                        *

_____

Submitted: December 13, 2011
Filed : April 16, 2012

_____

Before LOKEN, MURPHY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Steven Grade brought suit against BNSF Railway Co. (BNSF), alleging common law negligence and seeking compensation for injuries he suffered when the automobile he was driving hit a BNSF railcar that was stopped at a railroad crossing.

The district court[1] granted summary judgment to BNSF dismissing all of Grade's claims. Grade appeals, and we affirm.

## I.

On a late December night in 2006, Steven Grade and his wife went grocery shopping in Hastings, Nebraska. On that night, Hastings was experiencing an ice storm that affected road conditions and reduced visibility. On the way home from grocery shopping, the Grades' automobile, driven by Steven Grade, hit a flatbed railcar owned by BNSF as the Grades attempted to pass through a railroad crossing. The flatbed railcar was part of a long string of flatbed railcars that had been detached from a BNSF train and that was parked unattended on a BNSF railroad track awaiting a crew change and removal of one of the railcars.[2] As a result of this collision, Grade sustained serious injuries to the bones of his lower arm and wrist, requiring surgery and resulting in permanent disability; additionally, his automobile was totaled.

Grade filed suit in Nebraska state court alleging eight claims of negligence under Nebraska law. Specifically, Grade claimed the accident was caused by BNSF:

(a) In failing to maintain a proper lookout for the motoring public who were lawfully using B [S]treet [where the accident took place];

(b) In failing to have its rolling stock under reasonable and proper control and supervision;

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]The string of railcars was so long that a different automobile at a different crossing also hit one of the flatbed railcars on the same night.

(c) In failing to break the parked flat cars at the crossing and move said cars a safe distance north or south of said grade crossing;

(d) In failing to have a flagman, or other railroad personnel, or to have appropriate automated audible, flashing or refectory [sic] warning devices at the crossing or on the flatcars in order to alert oncoming motorists on B Street that the flatcars were blocking the grade crossing;

(e) By blocking said grade crossing with unattended and parked flatcars for more than ten minutes without breaking and removing said cars from the grade crossing;

(f) In failing to maintain the B Street Crossing with a mounted flashing light and bell warning signal;

(g) In failing to install a mounted flashing light and bell warning signal at the B Street Crossing; and

(h) In marking the B Street Crossing with a cross-buck sign and not a cross arm devise [sic] with a flashing light.

(Complaint at 3). The case was removed to federal court based on diversity jurisdiction. BNSF moved for summary judgment, and the district court granted the motion, finding that Grade's claims (a), (b), (d),(f), (g), and (h) were preempted by the Federal Railroad Safety Act (FRSA) because they were inadequacy-of-warning claims and the warning device in place at the B Street crossing at the time of the accident was paid for by federal funds. The district court found that Grade's claims (c) and (e) failed because Grade could not prove causation, a necessary element of a negligence cause of action.

II.

Grade argues on appeal that the district court erred in granting summary judgment on each of his claims. "We review the district court's grant of summary judgment de novo, taking the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor." Quinn v. St. Louis Cnty., 653 F.3d 745, 750 (8th Cir. 2011). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010).

A. Inadequacy-of-Warning Claims

"We review the district court's determination concerning the preemption of the FRSA de novo." BNSF Ry. Co. v. Swanson, 533 F.3d 618, 621 (8th Cir. 2008). We are mindful of our general "reluctance to find preemption when interpreting a federal statute pertaining to a subject traditionally governed by state law." Id.

The federal regulations that address the adequacy of warning devices are found at 23 C.F.R § 646.214(b)(3) and (4). According to section 646.214(b)(3)(i):

> Adequate warning devices . . . on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
>
> (a) Multiple main line railroad tracks.
>
> (B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.

(C) High speed train operation combined with limited sight distance at either single or multiple track crossings.

(D) A combination of high speeds and moderately high volumes of highway and railroad traffic.

(E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.

(F) A diagnostic team recommends them.

23 C.F.R § 646.214(b)(3)(i). Where a crossing does not exhibit the factors listed in section 646.214(b)(3)(i), which require the crossing to be equipped with automatic gates and flashing lights, "the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA [Federal Highway Administration]." 23 C.F.R. § 646.214(b)(4).

BNSF introduced the uncontroverted affidavit of Ellis Tompkins, the custodian of records for the Nebraska Department of Roads (NDOR). Tompkins's affidavit and supporting documents indicated the following: The B Street Crossing where Grade's accident occurred was equipped with a reflectorized crossbuck sign. The crossbuck sign was installed pursuant to a 1978 agreement between the NDOR, BNSF's predecessor BN, and the FHWA to add reflectorized crossbuck signs to certain crossings within Nebraska. BN installed the reflectorized crossbuck and was reimbursed for 90% of its cost by federal funds from the FHWA. In the time since the crossbuck's installation, neither the NDOR nor the FHWA has considered whether the crossing required any additional warning devices.

Grade's complaint alleges that the crossbuck sign was inadequate because, although not required by federal regulation, additional warning devices, such as a flagman or lookout, should have been in place at the crossing. Additionally, Grade's claims (f), (g), and (h) appear to allege that the B Street Crossing should have complied with section 646.214(b)(3)(i), as he alleges the crossing should have been equipped with automatic gates and flashing lights.

In Norfolk Southern Railway Co. v. Shanklin, 529 U.S. 344, 357-59 (2000), the Supreme Court determined that when a crossing warning device has been installed using federal funds, any state claim alleging the inadequacy of that warning device is preempted irrespective of whether the warning device complied with section 646.214(b)(3) or (4). According to Shanklin, it is the use of federal funds in the installation of a warning device rather than the compliance with federal regulations that triggers preemption. 529 U.S. at 357-58. Because the B Street Crossing was equipped with a warning device using federal funds, under Shanklin, all of Grade's claims, including the claims alleging the crossing device was not in compliance with section 646.214(b)(3), are preempted.

Grade argues Shanklin is no longer good law because of a 2007 Amendment to the FRSA preemption section, 49 U.S.C. § 20106. Congress amended section 20106 in response to a group of cases arising out of a 2006 Minot, North Dakota accident in which a train derailed and released more than 222,000 gallons of toxic gas into the air, resulting in injury to many people. See Lundeen v. Can. Pac. Ry. Co. (Lundeen II), 532 F.3d 682, 687 (8th Cir. 2008). Federal courts that heard the Minot derailment cases, including ours, found that the plaintiffs' state causes of action were completely preempted by the FRSA. Id. at 687-88. These decisions "caus[ed] a stir on the political front." Id. at 688. In response, Congress passed the 2007 Amendment to the FRSA, which states:

Nothing in [the FRSA] shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party–

(A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

(B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

(C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106(b)(1)(A)–(C).  The Amendment was retroactive to the date of the Minot derailment.  49 U.S.C. § 20106(b)(2); Lundeen II, 532 F.3d at 688.

Grade argues that the 2007 Amendment renders Shanklin bad law and prevents his inadequacy-of-warning claims from being preempted.  We find, however, that the 2007 Amendment has no effect on Shanklin inadequacy-of-warning claims.  In the Minot derailment cases that the 2007 Amendment sought to address, the plaintiffs' claims were based on a theory that the railroads had negligently failed to inspect the rail track.  See Lundeen v. Can. Pac. Ry. Co. (Lundeen I), 447 F.3d 606, 614 (8th Cir. 2006), superseded by statute, 49 U.S.C. § 20106(b)(1)(A)-(C), as recognized in Lundeen II, 532 F.3d at 688. The FRSA regulations governing inspection of tracks place ongoing duties on railroads.  For example, "[e]ach railroad that operates railroad freight cars . . . shall designate persons qualified to inspect railroad freight cars for compliance" with the FRSA.  49 § C.F.R. 215.11(a).  "Similarly, federal regulations establish a specific inspection protocol including how, 49 C.F.R. § 213.233(b), when, §§ 213.233(c) & .237(a)-c, and by whom, §§ 212.203, 213.7 and

.233(a), track inspections must be conducted . . . ." <u>Lundeen I</u>, 447 F.3d at 614. "[F]ederal and state inspectors determine the extent to which the railroads, shippers, and manufacturers have fulfilled their obligations with respect to . . . inspection." <u>Id.</u> "[R]ailroads face civil penalties for violations." <u>Id.</u> Based on this extensive regulatory scheme governing inspection, we and other courts found that state claims arising from the Minot derailment were completely preempted. <u>See, e.g.</u>, <u>Id.</u> at 614-15; <u>Mehl v. Can. Pac. Ry., Ltd.</u>, 417 F. Supp. 1104, 1116-18 (D.N.D. 2006). The 2007 Amendment clarified that the FRSA does not preempt claims like those asserted in the Minot derailment cases that allege a railroad has "failed to comply with a Federal standard of care."

The legislative history of the 2007 Amendment indicates it was intended to clarify the preemptive effect of the FRSA, not to change it, and indeed the Amendment refers to itself as a clarification. <u>See</u> 49 U.S.C. § 20106(b); H.R. Rep. No. 110-259, at 351. Because the Amendment is a clarification and not a change, its application is limited to cases in which a plaintiff brings a negligence claim that alleges a railroad failed to comply with an ongoing, federal standard of care. In such cases, a plaintiff's claims are not preempted. However, where a plaintiff brings a claim alleging a violation of a federal regulation that does not create an ongoing, federal standard of care, the Amendment does not apply, and the plaintiff's claims are governed by pre-Amendment preemption cases.

The warning-device regulations under which Grade brings his claims do not create an ongoing, "federal standard of care" under which the railroad is expected to act. Rather than imposing a federal standard of care under which a railroad is expected to act, the warning regulations "take the '*final authority to decide* what warning system is needed . . . out of the railroad's and the state's hands.'" <u>Henning v. Union Pac. R.R. Co.</u>, 530 F.3d 1206, 1215 (10th Cir. 2008). The warning regulations "'displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal

-8-

approval obtained.'" Shanklin, 529 U.S. at 353 (quoting CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 670 (1993)). "If a crossing presents those conditions listed in [23 C.F.R § 646.214(b)(3)(i)], the State must install automatic gates and flashing lights, if the (b)(3) factors are absent, (b)(4) dictates that the decision as to what devices to install is subject to FHWA approval." Id. at 354. Unlike the inspection regulations at issue in the derailment cases, the warning regulations place no ongoing duty on the railroads with which the companies are expected to comply. The State may demand the railroad's assistance in the installation of warning devices, but the regulations themselves place no duty on the railroads to act and thus do not outline a "federal standard of care" with which the railroads must comply. The regulations place the responsibility for implementing adequate warning devices on the State, thereby preempting any cause of action alleging a railroad failed to properly install an adequate warning device. The railroad "could not, as a matter of law, fail to comply with § 646.214(b)(3) or (4)." Henning, 530 F.3d at 1215.

Because we agree with the Tenth Circuit that the warning regulations do not create a federal standard of care under which the railroad is expected to act, the 2007 Amendment has no effect on the prior case law relating to those regulations. As such, Shanklin was not overruled by the 2007 Amendment, and it is controlling. Under Shanklin, because the B Street Crossing warning system was paid for in part by federal funds, Grade's warning claims are preempted.

In addition to his argument that his warning claims are no longer preempted based on the 2007 Amendment to the FRSA, Grade argues his claims are not preempted based on the local-condition savings clause under the FRSA. Under the savings clause, claims that would otherwise be preempted under the FRSA are not preempted where a claim is brought under a state law necessary to address an essentially local condition. See 49 U.S.C. § 20106(a)(2)(A)–(C); Duluth, Winnipeg, & Pac. Ry. Co. v. City of Orr, 529 F.3d 794, 796 (8th Cir. 2008). Grade argues that

a local condition existed at the B Street crossing, specifically, heavy fog and ice, making it necessary for extra warnings to be in place.

The local-condition savings clause does not apply where a condition is statewide in character or is capable of being adequately addressed in the national standards created by the Secretary of Transportation. Duluth, Winnipeg, & Pac. Ry. Co., 529 F.3d at 798. In Duluth, the plaintiffs alleged five local conditions existed that warranted heightened safety expectations: 1) the track was in close proximity to a lake; 2) the soil surrounding the crossing was swampy; 3) propane tanks were located too close to the track; 4) churches and businesses were located extremely close to the track; and 5) extreme seasonal temperature changes occurred in the region. Id. at 797-99. We found these conditions were insufficient to establish a local condition. Id. at 798-99. In implementing the national regulations, the Secretary of Transportation was surely aware that fog would exist along railroad tracks on many occasions and that ice storms would occur. These conditions are not uniquely local in character and could be adequately addressed at the national level. Thus, the local-condition savings clause does not apply, and the district court was correct in determining that Grade's inadequacy-of-warning claims were preempted by the FRSA.

## B. Inadequacy of Reflective Material Claim

The portion of Grade's claim (d) that alleges negligence in failing to equip the railcars with reflective devices or warning lights is also preempted because there are federal regulations that control what types of warning devices must be placed on railcars, and the BNSF railcar was in compliance with those regulations. See 49 C.F.R. §§ 224.101, 107. The regulations establish a timeline for equipping cars owned prior to 2006 with reflective material, and BNSF's evidence indicated that the railcar in question was not yet required to be equipped with reflective devices under the timeline. Regulation 224.1(b) states that owners of railcars are "under no duty to

install, clean or otherwise maintain, or repair reflective material except as specified" by the regulations. 49 C.F.R. § 224.1(b). BNSF was in compliance with the federal regulations controlling reflective devices, and Grade cannot create requirements beyond those included in the regulations through a state tort suit. The district court was correct in determining that Grade's claim of negligence based on failure to equip the railcar with reflective devices is preempted.

### C. Failure to Break Cars and Improper Blocking Claims

In claims (c) and (e) of his complaint, Grade alleges BSNF was negligent in failing to break the railcars once the train was stopped at the crossing, thereby blocking the crossing in violation of a Nebraska regulation that limits the amount of time that a railcar can block a crossing to ten minutes. 415 Neb. Admin. Code. ch. 7 § 005.01 (2006).

To be successful in a negligence action under Nebraska law, Grade must demonstrate that BNSF owed a duty to him, that BNSF breached its duty, and that the breach was the proximate cause of the accident. Dresser v. Union Pac. R.R. Co., __ N.W.2d __, __, No. S-10-645, 2011 WL 4861870, at *4 (Neb. Oct. 14, 2011). In Nebraska, the "violation of a safety regulation, established by a statute or ordinance, is not negligence as a matter of law, but is evidence of negligence which may be considered in connection with all the other evidence in the case in deciding the issue." Orduna v. Total Constr. Servs., Inc., 713 N.W.2d 471, 479 (Neb. 2006). Assuming *arguendo* that the Nebraska statute is sufficient to create a duty to refrain from blocking a track in excess of ten minutes and assuming BNSF breached that duty, "[a] defendant's negligence is not actionable unless it is a proximate cause of the plaintiff's injuries." Scott v. Khan, 790 N.W.2d 9, 19 (Neb. Ct. App. 2010).

"Under Nebraska negligence law, proximate cause consists of three elements: that (1) but for the negligence, the injury would not have occurred, (2) the injury is

the natural and probable result of the negligence, and (3) there is no efficient intervening cause." Heatherly v. Alexander, 421 F.3d 638, 641-42 (8th Cir. 2005). "The test of causation is not that the particular injury could be anticipated but whether after the occurrence, the injury appears to be the reasonable and probable consequence of the acts or omissions." Meyer v. Nebraska, 650 N.W.2d 459, 466 (Neb. 2002) (per curiam).

The district court found that Grade's claim failed because Grade could not demonstrate the first two elements of proximate cause. We agree that Grade cannot show that his injuries were the natural and probable result of BNSF's negligence in blocking the crossing in excess of the ten minutes of permitted blocking time. Under Nebraska law, certain injuries are so attenuated from a defendant's breach of duty that they cannot be said to be caused by the defendant's actions. See, e.g., Wilken v. City of Lexington, 754 N.W.2d 616, 624 (Neb. Ct. App. 2008) (finding it was not a foreseeable consequence of leaving a police car with the keys in the ignition within access of a suspected juvenile delinquent that the juvenile would steal the car and use the weapons inside). We fail to see how the natural and probable consequence of a railroad's permitting a railcar to remain on a crossing longer than the allotted ten minutes is that an automobile will collide with that railcar. As a matter of law, Grade has failed to demonstrate causation and his claim fails. The district court appropriately granted summary judgment based on lack of causation, and we need not reach the issue of whether Grade's claim is preempted by federal law.

### D. Failure to Keep Rolling Stock Under Control Claim

In claim (b) of his complaint, Grade claims BNSF was negligent in failing to keep its rolling stock under reasonable and proper control and supervision. However, BNSF's cars were stopped and were located on a BNSF track, exactly where BNSF intended for them to be. Grade has failed to demonstrate that the cars were not under

BNSF's control. Therefore, the district court properly granted summary judgment as to this claim.

IV.

For the foregoing reasons, we affirm the grant of summary judgment as to all of Grade's claims.

_____