*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2384**

Gary William Frieler,
Appellant,

vs.

BNSF Railway Company, et al.,
Respondents

**Filed August 4, 2014
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CV-12-19931

Sharon L. Van Dyck, Van Dyck Law Firm, PLLC, St. Louis Park, Minnesota (for appellant)

Timothy R. Thornton, Jonathan P. Schmidt, Briggs and Morgan, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Larkin, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges the district court's grant of summary judgment, arguing that the court erred by concluding that his claims were preempted by the Federal Railroad Safety Act (FRSA), 49 U.S.C. §§ 20101 to 21311 (2006 & Supp. 2011). We affirm.

**FACTS**

Appellant Gary William Frieler was injured in 2011 when his pickup truck was struck by a train owned by respondent BNSF Railway Company and operated by respondents Kevin Jerome Engeseth and John Doe, employees of BNSF (collectively, BNSF). Frieler sued BNSF, asserting a number of claims, including an allegation that BNSF was negligent due to inadequate warning devices at the crossing.

The intersection where the collision occurred does not have active warning devices such as lights, bells, or automatic gates; rather, the intersection has stop signs, cross bucks,[1] and signs warning that there are two tracks and to "Look for trains." As Frieler approached the tracks, a westbound train passed in front of him on the nearer set of tracks. Frieler drove forward, crossing the first set of tracks. As Frieler crossed the second track, he was struck by an eastbound train, which did not have time to stop. According to train records, the train was traveling below the speed limit, the headlight was on, and the crew had signaled with horn and bells before the crossing. Frieler suffered serious head injuries.

The stop signs, cross bucks, and sign warning of multiple tracks at the intersection were installed in the 1990s as part of a federal project to upgrade railway signs with more effective reflective material. The federal government paid for 90% of the upgrade and BNSF paid the remaining ten percent. The State of Minnesota installed the stop signs after Perham Township requested additional signage. The stop signs were approved by

---

[1] Cross bucks are black-and-white x-shaped signs that state "Railroad Crossing."

the federal government but they were installed separately from the federal sign-upgrade project.

Both parties moved for summary judgment. The district court granted BNSF's motion, concluding that Frieler's claim was preempted by federal law. This appeal followed.

# D E C I S I O N

We review a district court's grant of summary judgment de novo to determine whether there are any genuine issues of material fact and whether the district court properly applied the law. *Riverview Muir Doran, LLC v. JADT Dev. Group, LLC*, 790 N.W.2d 167, 170 (Minn. 2010). We also review the district court's decision regarding whether a claim is preempted by federal law de novo. *Engfer v. Gen'l Dynamics Advanced Info. Sys., Inc.*, 844 N.W.2d 236, 239 (Minn. App. 2014), *review denied* (Minn. May 28, 2014).

By virtue of the Supremacy Clause, U.S. Const. art. VI, cl. 2, federal law preempts state law if (1) there is an explicit legislative statement displacing state law; (2) federal legislation so pervasively occupies a field that it is assumed that it supersedes state law on the same subject; or (3) federal legislation conflicts with state law to the degree that it is impossible to comply with both state and federal law, or state law creates an obstacle to achieving the purpose of the federal legislation. *Hernandez v. State*, 680 N.W.2d 108, 111 (Minn. App. 2004), *review denied* (Minn. Aug. 17, 2004).

Railroad-crossing signage involves an interplay between the FRSA and the Federal Highway Act (FHWA), 23 U.S.C. §§ 101 to 610 (2012). Under the FRSA,

3

"[l]aws, regulations, and orders related to railroad safety and . . . security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106 (a)(1). "A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until [federal authorities] prescribe[ ] a regulation or issue[ ] an order covering the subject matter of the State requirement." *Id.* (a)(2). The FHWA includes a program to promote safety and provide funding to eliminate hazards at railway-highway crossings. 23 U.S.C. § 130. This section provides funding for "elimination of hazards and the installation of protective devices at railway-highway crossings," with the federal government providing 90% of the funds necessary to cover these projects. *Id.* (e), (f). The Federal Highway Administration promulgated regulations prescribing the type of warning devices that must be installed when federal funds are used to pay for the devices. 23 C.F.R. § 646.214 (2014).

Because of this legislation and the regulations enacted in reliance on the laws, "the Supreme Court determined that when a crossing warning device has been installed using federal funds, any state claim alleging the inadequacy of that warning device is preempted irrespective of whether the warning device complied with section 646.214(b) (3) or (4)." *Grade v. BNSF Ry.*, 676 F. 3d 680, 684 (8th Cir. 2012). In *Norfolk S. Ry. v. Shanklin*, 529 U.S. 344, 358-59, 120 S. Ct. 1467, 1476-77 (2000), the Supreme Court concluded that in any railway-highway crossing project for which federal funds were used, federal law preempted state tort-law claims, and, therefore, a railroad could not be held responsible for the adequacy or inadequacy of those devices. Applying *Shanklin*, this court concluded that, even when the devices installed do not meet the specific

4

standards of section 646.214(b)(3), which mandates automatic gates and flashing lights for crossings similar to the one here, the fact that federal authorities approved and financed the installation of passive devices at the crossing "conclusively established [the warning devices] as 'adequate,' and state tort claims alleging the inadequacy of these devices are preempted." *Hernandez*, 680 N.W.2d at 113.

Frieler concedes that the FRSA and the FHWA together act to preempt certain state-law claims. But Frieler argues that the 2007 amendment to the FRSA "preserves state law claims alleging the failure to comply with a federal standard of care" as set forth in 23 C.F.R. § 646.214. Under that section, if a crossing has multiple tracks, trains operate at high speeds, or there is a high volume of vehicular traffic or reoccurring accidents, or a diagnostic team recommends it, automatic gates and flashing light signals must be installed, if the project at least partially uses federal funds to pay for the installations. 23 C.F.R. § 646.214(b)(3).

The 2007 amendment arose out of a 2002 train derailment in Minot, North Dakota, which released clouds of anhydrous ammonia gas into a residential neighborhood, resulting in one death and 322 injuries, 11 of them serious. *Lundeen v. Canadian Pac. Ry.*, 507 F. Supp. 2d 1006, 1008-09 (D. Minn. 2007). The cause of the derailment was a damaged rail that the railway had failed to inspect and repair. *Id.* at 1009. The many tort-claim cases filed against the railway were dismissed as preempted by federal railway regulations. *See, e.g., id.* at 1012. In response, Congress amended 49 U.S.C. § 20106, the preemption statute, to clarify that "[n]othing in [this section] shall be construed to preempt an action under State law seeking [tort] damages . . . alleging that a party" failed

5

to comply with a federal standard of care, its own plan, rule, or standard, or a state law, regulation, or order that is not incompatible with the preemption standard. *See Grade*, 676 F.3d at 685.

Frieler argues, as did the plaintiff in *Grade*, that this amendment preserves his inadequacy-of-warning claim from preemption. *Id.* Frieler asserts that 23 C.F.R. § 646.214(b)(3) sets forth federal safety standards for multiple-track crossings and BNSF failed to comply with those standards, which require automatic gates and flashing light signals. He maintains that, under the plain language of the 2007 amendment, he is permitted to maintain a state tort claim against BNSF because it failed to comply with a federal standard of care.

The Eighth Circuit rejected this argument in *Grade*, reasoning that the amendment did not change, but rather clarified, "the preemptive effect of the FRSA." *Id.* The Eighth Circuit concluded that the amendment applied to claims arising out of a railroad's failure "to comply with an ongoing, federal standard of care." *Id.* For example, in the Minot cases, federal regulations required a railroad to "designate persons qualified to inspect railroad freight cars for compliance [with federal regulations]" and to inspect tracks according to certain federal protocols. *Id.* Railroads were subject to civil penalties for violating these regulations. *Id.* Liability under the 2007 amendment was premised on railways having an ongoing duty of care and failing to comply with that duty. *Id.* In contrast, "the [crossing-warning signal] regulations place no ongoing duty [of care] on the railroads with which the companies are expected to comply." *Id.* at 686. Rather, the state must determine the adequacy of the warning devices, subject to federal approval.

*Id.*; *see Henning v. Union Pac. R.R.*, 530 F.3d 1206, 1216 (10th Cir. 2008) (holding that inadequacy-of-warning claim preempted despite 2007 amendment); *see also Zimmerman v. Norfolk S. Corp.*, 706 F. 3d 170, 188-93 (3rd Cir. 2013) (holding tort claim that railroad failed to maintain warning sign not preempted, but inadequacy-of-warning-sign claim preempted).

Frieler also argues that the district court failed to address his alternate claim, that federal law also preempts Minn. Stat. § 219.402 (2012), which provides that "[c]rossing warning devices or improvements installed or maintained under this chapter as approved by the commissioner or any predecessor, whether by order or otherwise, are adequate and appropriate warning for the crossing." Because federal law preempts Frieler's state law claims, we need not address this statute.[2]

**Affirmed.**

---

[2] Nevertheless, it adds an additional reason why BNSF cannot be held liable for the inadequacy of warning devices approved by the state. In the only published case analyzing this statute, the statute was invoked to support a presumption of adequacy and a finding of discretionary immunity on behalf of the state. *McEwen v. Burlington N. R.R.*, 494 N.W.2d 313, 316 (Minn. App. 1993), *review denied* (Minn. Feb. 25, 1993).